[No. C065746. Third Dist. Apr. 7, 2011.]

In re Z.W., a Person Coming Under the Juvenile Court Law.
SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN
SERVICES, Plaintiff and Respondent, v.
S.J., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication
with the exception of parts III. and IV. of the Discussion.

## COUNSEL

Seth F. Gorman, under appointment by the Court of Appeal, for Defendant and Appellant.

Robert A. Ryan, Jr., County Counsel, and Lilly C. Frawley, Deputy County Counsel, for Plaintiff and Respondent.

## OPINION

**MURRAY, J.**—The mother (S.J.) (mother) appeals from the juvenile court's orders reinstating the juvenile court's orders terminating her parental rights and implementing a permanent plan of adoption as to minor Z.W. (who was born in late 2007). (Welf. & Inst. Code, § 366.26.)[1] The father (father) has not appealed.

Mother's sole contention on appeal is that the Sacramento County Department of Health and Human Services failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.).

In the published portion of the opinion, we hold that although the list of designated agents published annually in the Federal Register changed prior to the final ICWA compliance hearing, the ICWA noticing was valid because the last revised notices were mailed to the agents listed on the previous published list and received before the new list was published. We also hold that mother forfeited any claim concerning defects to the contents of the final ICWA notices because she did not object in the juvenile court.

In the unpublished portion of the opinion, we hold that mother has no standing to challenge an alleged failure to serve father with the final ICWA notice, that she forfeited her claim concerning the tribes' responses to the ICWA notices, and that the failure of some tribes to respond does not indicate error.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

We shall affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

In May 2008, the Sacramento County Department of Health and Human Services (Department) removed the minor from the custody of mother and father. In October 2008, the juvenile court sustained the jurisdictional allegations and denied reunification services to both parents. In May 2009, the court terminated the parents' rights to the minor.

Mother appealed from that order, claiming the juvenile court failed to comply with ICWA. (*In re Z.J.* (Jan. 8, 2010, C062424) [nonpub. opn.].)[3] As stated in this court's opinion, mother identified the following errors in the Department's ICWA notices: "(1) the notices failed to list the relative through whom mother's purported Indian heritage derived, despite [the Department] having been given the information by mother and mother's cousin; (2) [Department] failed to satisfy the inquiry provisions as to the father's purported ancestry with the Blackfeet Nation; and (3) they failed to list father's ancestral information." (*In re Z.J., supra,* C062424.)

The Department conceded its errors on appeal and this court vacated the order terminating parental rights and remanded the matter "with directions to order the Department to: (1) fully identify the relative through whom mother's purported Indian heritage derives; (2) inquire further into the father's purported Indian ancestry; and (3) include the father's ancestral information in the ICWA notice." Our opinion also stated, "If either tribe responds that the minor is an Indian child or eligible for enrollment, the court shall proceed as required by the ICWA. If there is no response to the ICWA notice, or if the tribes or the Bureau of Indian Affairs determine the minor is not an Indian child, the court shall reinstate the order terminating parental rights." (*In re Z.J., supra,* C062424.)

While that appeal was pending, the juvenile court reappointed counsel to assist the parents with the ICWA issues and set an ICWA compliance hearing for December 11, 2009. At the compliance hearing, the Department indicated it had "interviewed the relatives" of the parents and it would send new ICWA notices to the tribes.

To investigate mother's claim of Indian ancestry, on December 1, 2009, the Department interviewed mother and mother's paternal aunt, E.J. E.J. indicated that the minor's maternal great-great-grandfather's name was John

---

[2] Because the sole issue on this second appeal is ICWA compliance, the factual and procedural background is abbreviated.

[3] In November 2009, the minor's true name was found to be "Z.W.," not "Z.J."

Jefferson, and he was reportedly Creek Indian, and his roll number was "Freedom Roll . . . 103." E.J. also said that the minor's maternal great-great-great-grandfather's name was James Jefferson and her maternal great-grandfather's name was Jim J. E.J. said she did not know if Jim J. was Native American, and did not know of anyone in the family who lived on an Indian reservation.

E.J. also confirmed there was Choctaw and Creek ancestry from the maternal grandfather's mother, but could not say from whom the Choctaw ancestry originated. Mother and E.J. confirmed the spelling of all of the names they had provided, but had no further information to give. E.J. said she would continue trying to obtain information and would contact the Department if she learned anything new.

Several days later, mother contacted the Department by telephone. Mother had her maternal aunt on the telephone as well, but the aunt did not give her name.[4] The aunt confirmed that the minor's maternal great-great-great-grandmother was "full Indian," although she did not know her name or her tribe. Mother and her aunt said "they had provided all the information known to them regarding their Native American ancestry."

Mother later provided the Department with the phone number for the minor's paternal grandfather, "L.L.W." The Department contacted L.L.W., who said his ancestry was Choctaw, not Blackfeet as previously reported. He explained the Choctaw ancestry was from his mother's side of the family, but his mother was not enrolled in any tribe and neither was he. He also said he did not know if the minor's paternal grandmother, deceased, was Native American.

The Department attempted to reach father at the county jail facility where he was thought to be incarcerated to obtain further information regarding the paternal grandmother, but he did not respond. It was later determined that he had been transferred from county jail custody to a state facility.

On December 14, 2009, the Department sent another ICWA-030 notice to the Bureau of Indian Affairs (BIA) and the parents by certified mail. Notices also were sent to the Choctaw, Creek, Cherokee, and Blackfeet tribes. Included in the revised notice was a family tree for the minor, which provided more detailed information about the minor's potential Indian ancestry. The revised notice included the maternal grandmother's name and place of birth, as well as the maternal great-great-grandfather's name, state of birth, roll number, and tribe.

---

[4] At a hearing on January 15, 2010, counsel for mother identified the maternal aunt by name, Z.D.

At the January 15, 2010 ICWA compliance hearing, mother made several corrections to the December 14, 2009 ICWA-030 notice. She stated that the maternal grandmother's first name was "Glinda," not "Glenda," her birth date was May 18, 1957, and her date of death was October 13, 1974. Mother also corrected the minor's maternal grandfather's middle name: "the mother's biological father's correct middle name is Gayle, G-a-y-l-e, as opposed to Dale," and the date of his death was December 5, 1981. Mother also stated that although the minor's great-grandmother passed away in Reno, she actually lived in Sacramento. Mother then confirmed the remaining information was accurate.

On January 28, 2010, the Department sent via certified mail revised pages one, three and 10 of the ICWA-030 notice to mother, the BIA, and the Choctaw tribes, Cherokee tribes, Creek tribes, and the Blackfeet tribe previously noticed. The revised pages were accompanied by a cover letter indicating the changes had been made because mother had made additional corrections to the information that had been provided.[5] The Department failed, however, to change page four of the ICWA-030 notice to reflect that the minor's great-grandmother's former residence was Sacramento, not Reno.

On March 5, 2010, father was present and represented by counsel. He provided the court with further information regarding his ancestry, including his mother's maiden name. Father also gave the Department contact information for his father. Mother, who was present at the hearing and represented by counsel, confirmed that the information contained in the previous ICWA-030 notice was correct.

The Department later again spoke with the minor's paternal grandfather, L.L.W., and learned that the paternal grandmother did not have Indian ancestry. The paternal grandfather confirmed the remainder of the information provided regarding his side of father's family, but said that his mother, the minor's paternal great-grandmother, was from Texas, not Oklahoma as indicated on the previous ICWA-030 notice.

On March 8, 2010, two days before this court issued the remittitur in the prior appeal, but three months after the opinion was filed, a corrected ICWA-030 notice, including father's new information, was sent to the same tribes previously noticed and the BIA.

On April 20, 2010, and again on April 30, 2010, the Department filed declarations documenting the tribes' receipt of the March 8, 2010 revised ICWA-030 notice. Another ICWA compliance hearing was then held on May

---

[5] Father's residence was listed as "unknown."

7, 2010. The compliance hearing, also a "Return on Remittitur" hearing, was continued to May 21, 2010, "to let the requisite time pass in order for the notice to be perfected and the tribes to respond."

Mother was present and represented by counsel at the May 7 hearing. At the hearing the court told mother and her counsel, ". . . I do need to have the mother review the final document sent as of the last hearing. And let's go off the record for just a minute. [¶] . . . [¶] . . . I'm referring to the March 8th. And could you review that with the mother and make sure that we have made all the proper corrections now? Let's go back off the record."

After going back on the record, mother, through her counsel, raised some concerns regarding the March 8, 2010 notice. She again indicated that the correct spelling of her mother's name was "Glinda," not "Glenda," although Z.D. had told the Department paralegal her name was spelled "Glenda." The court confirmed the notice indicated that the minor's maternal grandmother's name was either "Glinda or Glenda." Mother's counsel also stated that her father's name is "Larry Gale not Dale." "Gale with a g."

Reading the March 8, 2010 notice, the court responded: "So it says Larry Gale or Dale J."

"[Mother's Counsel]: Having both there and having the tribe search there is no harm, no foul.

"THE COURT: Okay. Good. That's proper to have both."

We use the spelling "Gale" for the middle name here because that is what is reflected in the record of the May 7 hearing. The ICWA notice shows the middle name spelled as "Gale," not "Gayle," as mother said at the January 15 hearing. However, despite having apparently reviewed the notice, neither mother nor her counsel mentioned the spelling of her father's middle name during the May 7 hearing.

Finally, counsel for mother indicated that the minor's maternal great-grandmother lived in Sacramento, but died in Reno. As he spoke, counsel for mother recognized that the March 8, 2010 notice correctly reflected that information: ". . . she had this address in Sacramento but passed away in Reno, which is reflected at the bottom. . . . So it does not seem—this is not additional or corrected information. It's just sort of clarification."

On May 21, 2010, the court held its final ICWA compliance hearing, along with the return on remittitur and a postpermanency review for the minor.

Neither mother nor father was present at the hearing; however, both were represented by counsel. The following exchange occurred on the record:

"THE COURT: . . . And I have received, read and considered the remittitur issued by the Third District Court of Appeals [*sic*], the ICWA compliance hearing, post permanency review hearing report submitted by the Department. It does appear that in regard to the Indian Child Welfare Act tribes have been noticed and re-noticed and subsequently noticed. And we have waited 60 days from all of those. We have some negative response and some absence of response.

"[County Counsel], did you want to be heard on the remittitur or ICWA issues?

"[County Counsel]: No. Just—I am just requesting that the Court find that based on the evidence before the Court and the declaration dated May 20th that the Court find that the ICWA—make the ICWA finding that ICWA is not applicable in this matter.

"THE COURT: Okay. [Counsel for the minor]?

"[Counsel for the Minor]: I submit on that.

"THE COURT: Okay. [Counsel for father]?

"[Counsel for Father]: Submitted.

"THE COURT: [Counsel for mother]?

"[Counsel for Mother]: Submit on that.

"THE COURT: Then the Court will find that the Department has followed up as directed by the Appellate Court, fully identifying the relative from whom the mother's Indian heritage purportedly derives, inquiring into the father's Indian ancestry, including the father's information in the ICWA notice. We have waited 60 days. So the Court at this time will again find that the child is not an Indian Child within the meaning of the Indian Child Welfare Act and shall re-instate the order terminating parental rights."

## DISCUSSION

### I. Notice Was Sent to the Correct Agents

Mother contends the Department sent the March 8, 2010 ICWA notice to the wrong people for receipt of ICWA notice for the Choctaw Nation of

Oklahoma, the Mississippi Band of Choctaw Indians, the Muscogee (Creek) Nation, the Thlopthlocco Tribal Town, the Eastern Band of Cherokee Indians, the Blackfeet Tribe of Montana, the Kialegee Tribal Town, the Poarch Band of Creek Indians, the Cherokee Nation of Oklahoma, and the United Keetoowah Band of Cherokee Indians.

In support of her contention, mother relies on the list of agents published for service of process under the ICWA by the BIA on May 19, 2010. (75 Fed.Reg. 28104 et seq. (May 19, 2010).) Because the new list was published prior to the final ICWA compliance hearing on May 21, 2010, and the agents for service changed, she contends the notices were improper. Mother's contention is without merit.

The last revised ICWA notices were sent on March 8, 2010, two and a half months before the new list of agents was published in the Federal Register. Certified mail receipts indicate that the tribes received the notices. The last tribe to receive the March 8, 2010 notice received that notice on March 17, 2010, nearly two months before the new list was published. Thus, the notices were correct at the time they were sent, and they were correct at the time they were received.[6]

Furthermore, while the designated agent for some of the tribes may have changed in the published list, the addresses did not.[7] (Compare 74 Fed.Reg. 19326 et seq. (Apr. 28, 2009) with 75 Fed.Reg. 28104 et seq. (May 19, 2010).) Accordingly, we find no error.

The holding in *In re J.T.* (2007) 154 Cal.App.4th 986 [65 Cal.Rptr.3d 320] (*J.T.*) does not alter our conclusion. In *J.T.*, the juvenile court found the social services agency had complied with ICWA notice requirements even though notices had not been sent to all of the tribes in which the mother claimed ancestry. (154 Cal.App.4th at pp. 989, 990–991, 992.) In reaching its decision, the juvenile court relied on the notice requirements in effect at the time the ICWA notices were sent. Prior to the ICWA compliance hearing, however, section 224.2 was enacted—changing the notice requirements. (*J.T.*, *supra*, 154 Cal.App.4th at pp. 991–992, 993–994.)

---

[6] The May 19, 2010 Federal Register lists as the registered agent for the Poarch Band of Creek Indians, "Carolyn M. White, Executive Director." (75 Fed.Reg. 28114 (May 19, 2010).) The April 28, 2009 Federal Register lists the same name. (74 Fed.Reg. 19336 (Apr. 28, 2009).) The Department's declaration, upon which appellant relies, indicates the March 8, 2010 notice to the Poarch Band of Creek Indians was sent to "Karen Rackard." In fact, the return receipt indicates it was sent to "Carolyn Rackard, ICWA Dept[.] of Family Services." The address is the same and only the first name is different; the deviation is de minimis.

[7] Mother contends the notice to the Mississippi Band of Choctaw Indians was sent to "P.O. Box 6010" instead of "P.O. Box 6050." In fact, the record indicates the notice was sent to "P.O. Box 6050."

Under section 224.2, the social services agency was required to send ICWA notices to all of the federally recognized tribes in which the mother claimed ancestry. (*J.T., supra*, 154 Cal.App.4th at p. 994.) It was no longer sufficient to send notice only to the BIA. (*Ibid.*) The appellate court concluded the juvenile court erred because the juvenile court was required to follow the law in effect at the time of the compliance hearing, not at the time the notices were sent. (*Id.* at pp. 991–992.)

■ Unlike the change in the law in *J.T.*, the changes here were not substantial. Here, the BIA published its annual list of registered agents for service and their addresses in the Federal Register after the March 8, 2010 notice was sent but prior to the ICWA compliance hearing. The notice requirements did not change. In some instances, the person to whom the notice should be sent did change, but not until after the notices had already been received.

## II. Mother Has Forfeited Her Claims of Error Regarding the Content of the March 8, 2010 ICWA Notice

Mother complains of the following deficiencies in the March 8, 2010 ICWA notice: (1) the Department failed to include the roll number for the minor's great-great-great-grandfather, James Jefferson; (2) the Department omitted mother's claim of Blackfeet ancestry; (3) the notice lists mother's biological father as Larry Gale (or Dale) J., and his name is Larry "Gayle" J.; (4) the notice lists the paternal great-grandmother as "possibly born in Oklahoma," but she was from Texas; and (5) the notice was incorrect with respect to the birthplace of the minor's paternal grandfather, L.L.W. These matters were not raised in the trial court. Indeed, the last contention concerning the minor's paternal grandfather was raised for the first time in mother's reply brief on appeal.

■ Generally, the forfeiture doctrine does not bar consideration of ICWA notice issues not raised in the juvenile court. (See *J.T., supra*, 154 Cal.App.4th at p. 991; *In re Nikki R.* (2003) 106 Cal.App.4th 844, 849 [131 Cal.Rptr.2d 256] (*Nikki R.*).) Mother also cites our observation in *In re Justin S.* (2007) 150 Cal.App.4th 1426 [59 Cal.Rptr.3d 376]: " 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be waived by the parent.' [Citation.] A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*Id.* at p. 1435.) We stand by that observation, but the issue we resolved in *Justin S.* did not involve an objection to alleged deficient ICWA notices raised during a second appeal. In *Justin S.*, the mother

had not been informed of the postremand ICWA compliance hearing. (*Justin S., supra*, at p. 1432.) We held that on a limited remand for compliance with ICWA notice provisions, the mother was entitled to notice of the compliance hearing and representation by counsel for that hearing, even though the appellate court's dispositional language did not specifically direct the juvenile court to include the mother in the hearing. (*Justin S.*, at pp. 1435–1436.)

■ The situation presented in this case is different. When a case is remanded to the juvenile court for the purpose of curing ICWA notice defects and the parent is represented by counsel at the postremand compliance hearing and counsel raises no objection to new ICWA notices, an exception to the general rule against forfeiture may apply. (*In re X.V.* (2005) 132 Cal.App.4th 794 [33 Cal.Rptr.3d 893] (*X.V.*); *In re Amber F.* (2007) 150 Cal.App.4th 1152 [58 Cal.Rptr.3d 874] (*Amber F.*); *In re N.M.* (2008) 161 Cal.App.4th 253 [74 Cal.Rptr.3d 138] (*N.M.*).) Balancing the minor's interest in permanency and stability against the tribes' rights under the ICWA may require a different result in such a case.

■ In *X.V.*, the Court of Appeal, Fourth Appellate District, Division One, determined, "As a matter of respect for the children involved and the judicial system, as well as common sense, it is incumbent on parents on remand to assist the Agency in ensuring proper notice is given." (*X.V., supra*, 132 Cal.App.4th at p. 804.) There, the court considered whether, after a first appeal challenging the adequacy of the ICWA notice, the parents could challenge in a second appeal the adequacy of the ICWA notice issued on remand after failing to raise their objections in the juvenile court. (132 Cal.App.4th at pp. 801, 803.) The court explained that in the parents' first appeal, the case was remanded "for the specific and sole purpose of affording proper notice under the ICWA . . . ." (*Id.* at p. 803.) On remand, "the juvenile court ordered the Agency to give proper notice; the Agency obtained information on Indian heritage from the paternal grandmother and sent ICWA notices to the BIA and numerous tribes, and the ICWA notices, return receipts and responses were filed with the court . . . ." (*Ibid.*)

The parents in *X.V.* then failed to appear at the hearing in which their parental rights were terminated, though both were represented by counsel; neither parent objected to the adequacy of the ICWA notices. (*X.V., supra*, 132 Cal.App.4th at p. 803.) Family members for the parents were present at the termination hearing, but none of them objected to the adequacy of the ICWA notices either. (*Ibid.*)

In analyzing the parents' second appeal challenging the adequacy of the ICWA notices issued on remand, the court balanced "the interests of Indian

children and tribes under the ICWA, and the interests of dependent children to permanency and stability . . . ." (*X.V., supra*, 132 Cal.App.4th at p. 804.) In doing so, the court considered that the children had been in the dependency system for more than three years and their permanent placement had been substantially delayed by the two appeals. (*Ibid.*)

Thus, the court concluded: "We are mindful that the ICWA is to be construed broadly [citation], but we are unwilling to further prolong the proceedings for another round of ICWA notices, to which the parents may again object on appeal. . . . We do not believe Congress anticipated or intended to require successive or serial appeals challenging ICWA notices for the first time on appeal. . . . '[A]t some point, the rules of error preservation must apply or parents will be able to repeatedly delay permanence for children through numerous belated ICWA notice appeals and writs.' " (*X.V., supra*, 132 Cal.App.4th at pp. 804–805.)

Division Three of the Fourth Appellate District embraced the holding and reasoning in *X.V.* when faced with a similar situation. (*Amber F., supra*, 150 Cal.App.4th at p. 1156.) There, the same justice who wrote the opinion in *Nikki R.*, in which the general rule against forfeiture was discussed, adopted the *X.V.* exception to the general rule. "Balancing Amber's interest in permanency and stability against the tribes' rights under ICWA requires a different result in this case. The case was remanded for the sole purpose of correcting defective ICWA notice, and [the mother] had multiple opportunities to examine the notice documents. Had she brought the errors she now asserts to the juvenile court's attention, it could have dealt with them appropriately." (*Amber F., supra*, 150 Cal.App.4th at p. 1156.) The court went on to note that allowing parents to raise notice issues on second appeal after failing to raise those issues in the juvenile court at the postremand compliance hearing "opens the door to gamesmanship, a practice that is particularly reprehensible in the juvenile dependency arena." (*Ibid.*) Indeed, we note that one of mother's complaints here was made for the first time in her reply brief in this, her second appeal.

The Second District followed the holding in *X.V.* and *Amber F.* when faced with a similar situation. (*N.M., supra*, 161 Cal.App.4th at pp. 268–270.) We join in this view and arrive at the same result here.

Mother relies on *In re Alice M.* (2008) 161 Cal.App.4th 1189 [74 Cal.Rptr.3d 863], a case in which the Sixth District disagreed with the courts in *X.V.* and *Amber F.* In *Alice M.*, no ICWA inquiry was made in the juvenile court. On appeal, the court ordered the juvenile court to conduct the inquiry, and depending on the result of the inquiry, the juvenile court was directed to order the Department to give notice of the proceedings in compliance with

the ICWA. Thereafter, the inquiry was made and the Department sent out ICWA notices. The juvenile court determined that the notices complied with the ICWA and reinstated its order terminating the mother's rights. No objection was made to the sufficiency of the notices in the juvenile court. Instead, the mother objected to some of the notices for the first time on her second appeal, contending that the Department sent notices to the wrong people and misaddressed a notice.

The *Alice M.* court declined to follow *X.V.* and *Amber F.* The *Alice M.* court first appropriately noted a significant distinguishing fact. In *Alice M.*, the appellate court remanded the matter because no ICWA inquiries had been made in the juvenile court and consequently, no notices had been sent. The challenge to the ICWA notice on the second appeal was actually the first challenge to the sufficiency of the notices. In both *X.V.* and *Amber F.*, ICWA notices had previously been made, but those notices were defective. Thus, unlike *Alice M.*, the limited remands in *X.V.* and *Amber F.* were not for the purpose of sending ICWA notices for the first time, but rather for the purpose of curing defective notices.

The *Alice M.* court then went on to distinguish *X.V.* on the basis that the notice defect in that case related to the content of the notices—"information provided by or within the purview of the [mother]." (*In re Alice M., supra,* 161 Cal.App.4th at pp. 1196–1197.) The court found it significant that the defect with which it was faced related to the persons and addresses to which the notices were sent—something that was "solely the result of the Department's actions and within the Department's control." (*Id.* at p. 1197.)

We note that both *Amber F* and *N.M.* involved alleged defects in the mailing of the notices, e.g., alleged failure to send notices to the correct tribes, alleged misaddressed notices, notices allegedly sent to the wrong person—defects for which the Department would have been responsible. We conclude the distinction noted in *Alice M.* concerning the nature of the defect lacks significance. Mother here should have called any and all defects in the new notices to the attention of the juvenile court, no matter who was responsible for the defect and no matter who may have had control over the defect. Had an objection been made, the juvenile court could have addressed whatever deficiencies existed before terminating mother's rights.

Moreover, as we discussed in part I., *ante*, the noticing here was valid, notwithstanding mother's claim that the notices were mailed to the wrong people. Consequently, the distinction recognized by the *Alice M.* court concerning the nature of the defect is not relevant here because our application of the forfeiture rule relates to objections mother has belatedly made to the content of notices.

Recognizing that the nature of some of the alleged notice defects in *Amber F.* made that case factually indistinguishable, the *Alice M.* court went on to express disagreement with the reasoning in *X.V.* and *Amber F.* "[A]lthough some of the facts of *Amber F.* may be analogous, we disagree with the underlying rationale. Invoking the forfeiture doctrine because appellant raised an ICWA inquiry issue in a prior appeal would give the Department a free pass in complying with ICWA based solely on its previous ICWA failure. Such a result is contrary to ICWA's purpose and to the principle that the interest in proper ICWA notice belongs to the tribes—the same tribes that may have received deficient notice, or no notice at all. We find no statutory support or persuasive policy basis for shifting the burden of ICWA compliance to the child's parents, even if ICWA was raised in a prior appeal. We regret that ICWA errors often delay the resolution of dependency proceedings, but cannot conclude that the prospect of such a delay excuses noncompliance at the expense of those that ICWA is intended to protect." (*In re Alice M., supra*, 161 Cal.App.4th at p. 1197.)

We are not of the same view. There will be no "free pass" if there is an objection in the juvenile court. If the Department gets a "free pass" in a second appeal concerning ICWA notice defects, it is only because the parent fails to register an objection. When the objection is made, we trust the juvenile court to make the proper ruling and correct any defects in the ICWA noticing.

The principles applied in *X.V.*, *Amber F.* and *N.M.* apply here. This is not a case where no notice was sent or the Department failed to include known information. The Department here made repeated inquiries. The information that was forthcoming was provided to all of the tribes in four separate notices. Seven notices were sent to the BIA. During the process, mother offered corrections. Mother reviewed the notices at the penultimate hearing and failed to make any of the objections she makes now. While mother was not present at the final ICWA compliance hearing, she was represented by counsel. Her counsel did not raise the objections she belatedly now raises on appeal. In fact, he agreed there had been compliance with the ICWA notice requirements. Any inadequacies that mother now claims are fatal flaws could easily have been corrected had they been brought to the juvenile court's attention.

A line has to be drawn. At some point, there must be finality to the ICWA noticing process. Balancing the minor's interest in permanency and stability against the tribes' rights under the ICWA, we draw the line in this case. Under the circumstances presented here, we conclude that the issue of accuracy of the March 8, 2010 notice has been forfeited.

## III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The orders of the juvenile court are affirmed.

Raye, P. J., and Butz, J., concurred.

---

*See footnote, *ante*, page 54.