Filed 4/16/13  In re J.S. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E057431 |
| Plaintiff and Respondent, | (Super.Ct.No. J240577) |
| v. | OPINION |
| J.S., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Christopher B. Marshall, Judge.  Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, Dawn M. Messer, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Minor.

1

J.S. (minor) (born July 2011) came to the attention of plaintiff and respondent San Bernardino County Department of Children and Family Services (the department) after an incident of domestic violence between defendant and appellant J.S. (father) and minor's mother.[1] The department placed minor in foster care with his half sibling (R.K.), whom the department had previously removed.

Mother filed an Indian Child Welfare Act (ICWA) form indicating she might be a member of the Piute-Shoshone Indian Tribe. After the department completed notification to numerous potentially applicable Indian tribes, it indicated it had either received no response or was informed that mother was not a member of any of the Indian tribes so noticed. The juvenile court found ICWA did not apply.

The juvenile court eventually terminated father's parental rights. On appeal, father contends the juvenile court failed in its duty to determine whether ICWA applied because the department did not obtain return receipts from two of the noticed tribes, did not determine whether minor could have become eligible for membership in one of the responding tribes, and did not ensure another responding tribe had evaluated minor's maternal great-grandmother (MGG) for membership in the tribe.[2] We affirm the judgment.

---

[1] Mother is not a party to this appeal.

[2] "[A]ny parent whose parental rights were terminated may challenge the lack of ICWA compliance. [Citation.]" (*In re A.B.* (2008) 164 Cal.App.4th 832, 839, fn. 4; accord *In re B.R.* (2009) 176 Cal.App.4th 773, 779-780; *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 339.)

# FACTUAL AND PROCEDURAL HISTORY

On September 2, 2011, father entered the room where mother, minor, and maternal grandmother were sleeping. Father became extremely loud. Maternal grandmother told him to leave. She and father began to argue and push each other. Both fell to the ground. Mother intervened and was taken to the ground. Father punched mother in the nose; mother punched him back. Maternal grandmother picked up minor, left the room, and called the police. Father was arrested for domestic violence. Minor was taken into protective custody and placed in foster care with R.K., whom the department had previously removed.

The department filed a juvenile dependency petition alleging mother and father had substance abuse problems interfering with their ability to parent minor, had engaged in acts of domestic violence in the presence of minor thereby endangering him, the juvenile court had previously adjudicated R.K. as a dependent of the court due to physical abuse, and father was incarcerated. Mother filed an ICWA-020 form indicating she may be a member of the Piute-Shoshone Indian Tribe. Father filed an ICWA-020 reflecting he had no Indian ancestry, so far as he knew.

On September 8, 2011, the juvenile court detained minor and acknowledged mother's claim to Indian ancestry. In the jurisdiction and disposition report dated September 23, 2011, the social worker noted, "The Court found ICWA did not apply for [R.K.] on December 29, 2010. . . . Mother . . . did not give any new tribes that child/mother may have heritage."

3

On October 19, 2011, the social worker filed an ICWA declaration of due diligence reflecting notice to father and 45 entities including the Bureau of Indian Affairs (BIA), and over three dozen Indian tribes. The social worker declared that efforts to notify all potential Indian tribes had been completed; no confirmation of tribal membership had yet been received; all original certified receipts, return receipts, and tribal letters received were attached to the declaration.

On October 27, 2011, the social worker filed another ICWA declaration of due diligence. On November 1, 2011, the juvenile court found the allegations in the petition true, found jurisdiction over minor, and removed him from parents' custody. The court additionally found minor "may come under [the] provisions of [ICWA] and noticing requirements under ICWA have been initiated." The court offered parents reunification services.

At a hearing on January 3, 2012, the social worker submitted all responses received from the noticed Indian tribes. The social worker confirmed ICWA notices were sent via certified mail, return receipt requested, to all pertinent Indian tribes. The social worker requested the court find notice had been conducted as required by ICWA to all relevant tribes and that ICWA did not apply. The court found ICWA did not apply.

In a status review report filed April 23, 2012, the social worker noted that reunification services as to R.K. had been terminated on February 28, 2012, and the

4

Welfare and Institutions Code section 366.26[3] hearing was now scheduled for June 27, 2012. At the six-month review hearing on June 12, 2012, the court terminated parents' reunification services and set the section 366.26 hearing as to minor.

On July 6, 2012, father filed a notice of intent to file a writ petition from the order terminating his reunification services. On August 20, 2012, father's counsel filed a "Non-Issue Writ" notice. On August 23, 2012, this court dismissed father's petition. On October 31, 2012, the juvenile court terminated parents' parental rights as to minor.

## DISCUSSION

Father contends the juvenile court erred in ensuring proper notice to all pertinent Indian tribes because (1) no return receipts or responses were presented on behalf of the Lone Pine Paiute Shoshone (Lone Pine) and Timbi-Sha Shoshone (Timbi-Sha); (2) the response received from the Las Vegas Paiute (LV Paiute) Tribe failed to note it had checked for membership or eligibility on behalf of MGG; and (3) the response from the Fallon Paiute-Shoshone (Fallon) Tribe, which indicated mother was eligible for membership but that minor was not, failed to indicate whether and how minor could become eligible. Hence, father contends the department had a duty to make further inquiry to determine whether minor was an Indian child within the meaning of ICWA.

We hold father forfeited the issues raised on appeal by failing to raise them in his petition for extraordinary writ. We further hold the department fulfilled its statutory duty by giving notification containing the appropriate information to the relevant tribes, by

---

[3] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

5

certified mail with return receipts requested. Thus, because the department did not receive any response that minor was either a member or eligible for membership in any tribe, the juvenile court's determination that minor was not an Indian child within the meaning of ICWA was supported by substantial evidence. Moreover, to the extent the court committed any error, it was harmless because a previous court had determined R.K., who shared the same mother, was not an Indian child within the meaning of ICWA.

"Congress enacted ICWA to further the federal policy '"that, where possible, an Indian child should remain in the Indian community . . . ."'" [Citation.]" (*In re W.B., Jr.* (2012) 55 Cal.4th 30, 48.) "In certain respects, California's Indian child custody framework sets forth greater protections for Indian children, their tribes and parents than ICWA. [Citations.] Both federal and state law expressly provide that if a state or federal law provides a higher level of protection to the rights [of] the parent or Indian guardian of an Indian child, the higher standard shall prevail. [Citations.]" (*In re Jack C.* (2011) 192 Cal.App.4th 967, 977.)

"ICWA requires that when a court knows or has reason to know that an Indian child is involved in a dependency matter, it must ensure that notice is given to the relevant tribe or tribes. [Citation.]" (*In re J.O*. (2009) 178 Cal.App.4th 139, 154.) ICWA defines an "Indian child" as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C § 1903(4).) However, "[t]he juvenile court '"needs only a suggestion of Indian ancestry to trigger the notice requirement."'" [Citation.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.)

A.    LACK OF RETURN RECEIPTS FOR LONE PINE AND TIMBI-SHA

As discussed *ante*, father maintains the department's non-receipt of return receipts for its notifications to Lone Pine and Timbi-Sha fell short of its duty to ensure receipt of notification by all applicable tribes. Therefore, father argues substantial evidence fails to support the juvenile court's determination minor was not an Indian child within the meaning of ICWA because the court could not be sure those tribes even received notification, let alone made a determination of membership or eligibility.

First, we hold father forfeited the issue by failing to raise it in his petition for extraordinary writ. Although issues regarding adequate ICWA notification may be raised for the first time on appeal, a party may be deemed to have forfeited the issue if it is raised in a second appeal in the same case and the party could have but failed to assign any error in the first appeal. (*In re Z.W.* (2011) 194 Cal.App.4th 54, 67 (*Z.W.*) ["If the Department gets a 'free pass' in a second appeal concerning ICWA notice defects, it is only because the parent fails to register an objection. [¶] . . . [¶] A line has to be drawn. At some point, there must be finality to the ICWA noticing process"].) Second, we hold the department's statutory burden does not extend to ensuring the tribes' receipt of the notification; rather, the department's statutory burden requires only that it notify the appropriate tribes, at the correct addresses, with the relevant information. Third, we note that contrary to father's contention, and the department's concession, the record does contain return receipts for the notification of Lone Pine and Timbi-Sha. Finally, as we will discuss below, any error was harmless because the juvenile court made a previous determination that R.K. was not an Indian child within the meaning of ICWA.

7

"Under the implementing federal regulation, the required ICWA notices must include "[a]ll names known, and current and former addresses of the Indian child's biological mother, biological father, maternal and paternal grandparents and great grandparents or Indian custodians, including maiden, married and former names or aliases; birthdates; places of birth and death; tribal enrollment numbers, and/or other identifying information.' [Citation.] California law requires that the notices contain substantially the same data, including 'any other identifying information, if known.' [Citation.]" (*In re C.B.* (2010) 190 Cal.App.4th 102, 140, italics omitted.)

It is now widely accepted that in order "[t]o satisfy the notice provisions of [ICWA] and to provide a proper record for the juvenile court and appellate courts, [the department] should follow a two-step procedure. First, it should identify any possible tribal affiliations and send proper notice to those entities, return receipt requested. [Citation.] Second, [the department] should provide to the juvenile court a copy of the notice sent and the return receipt, as well as any correspondence received from the Indian entity relevant to the minor's status. If the identity or location of the tribe cannot be determined, the same procedure should be used with respect to the notice to [the BIA]." (*In re Marinna J.* (2001) 90 Cal.App.4th 731, 739, fn. 4.)

Here, father raises no dispute with the department as to which tribes it sent the notices, the information contained in those notices, the manner in which they were mailed, or any failure of the department to request return receipts. Rather, father alleges the department apparently had a further duty to ensure receipt by the tribes of the notification when no return receipt is received. Father cites no authority for such an

8

obligation.  Moreover, father does not suggest what steps the department should take when a return receipt is not recovered.

It is clear from both statutory and case authority that the department's obligation ends when it has notified the tribe at the proper address with the proper information by certified mail with return receipt requested.  (Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.480; *Z.W.*, *supra*, 194 Cal.App.4th 54, 62-63; cf. *In re Alice M.* (2008) 161 Cal.App.4th 1189, 1201 [department did not comply with notice requirements where notices were inaccurately addressed and the department did not receive return receipts].)  Moreover, letters correctly addressed and properly mailed are presumed to have been received in the ordinary course of mail.  (Evid. Code, § 641.)  Here, the department notified both Lone Pine and Timbi-Sha at the correct addresses with the proper information by certified mail with return receipts requested.  Thus, the department fulfilled its statutory obligation.

B.  FAILURE OF DEPARTMENT TO ENSURE LV PAIUTE CHECKED FOR MEMBERSHIP OR ELIGIBILITY OF MGG

Father maintains LV Paiute's response reflecting none of the named individuals were registered members of the tribe failed to list MGG; thus, he contends the department had an obligation to ensure the tribe checked for membership or eligibility of MGG.

"The United States Supreme Court noted that 'a tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community,' and cautioned against intrusion into tribal traditions by the courts.  [Citation.]  ICWA applies to children who are 'members' of a tribe. . . .

9

[Citations.]" (*In re Jack C.*, *supra*, 192 Cal.App.4th at p. 978.) "'It is the tribe's prerogative to determine membership criteria.' [Citations.]" (*Ibid.*; § 224.3, subd. (e)(1) ["A determination by an Indian tribe that a child is or is not a member of or eligible for membership in that tribe, . . . shall be conclusive"].) "The decision whether a child is a member of, or eligible for membership in, the tribe is the sole province of the tribe. [Citation.]" (*Jack C.*, at p. 980.) "[T]he determination [of] whether the child is an Indian child within the meaning of ICWA depends in large part on the tribe's membership criteria. Because of differences in tribal membership criteria and enrollment procedures, whether a child is an Indian child is dependent on the singular facts of each case. [Citation.]" (*Id.* at p. 979.)

As discussed above, we hold father forfeited the issue by failing to raise it in his petition for extraordinary writ. (*Z.W.*, *supra*, 194 Cal.App.4th at p. 67.) Second, we hold the department's obligation with regard to notice extends only insofar as ensuring notice to the relevant tribes with the pertinent information by certified mail with return receipt requested. Here, the department fulfilled that obligation with respect to LV Paiute. That notification included MGG's name, address, birth date, and place of birth. The department was not required to ensure that it received a response from each tribe, that each response met its own subjective criteria for determining eligibility for membership in the tribe, or had the ability to compel the sovereign tribe to provide such a response.

Contrary to *In re Jack C.*, none of the tribes in the instant case considered minor to be an Indian child, none of them intervened, and none of them stated there was "'no doubt'" minor would be enrolled. (*In re Jack C.*, *supra*, 192 Cal.App.4th at pp. 979-981.)

10

The purpose of ICWA is "'to give tribes the *opportunity* to investigate and determine whether a child is an Indian child, and to advise the tribe of the pending proceeding and its right to intervene.' [Citation.]" (*In re Z.N.* (2009) 181 Cal.app.4th 282, 301, italics added.) ICWA does not compel tribes to investigate and intervene in a manner dictated by states, the department, or the parties.

Moreover, LV Paiute responded that none of the named individuals were registered or enrolled with the tribe. Furthermore, LV Paiute wrote that it "is very small and applicants must be able to prove they **possess 1/4 Las Vegas Paiute Indian Blood and are descendants of someone on the 1940 Census Roll**." One may logically deduce that if mother did not qualify for membership in the tribe, then minor, whose father indicated no Indian ancestry, would not either because he would have been one degree of consanguinity removed from mother. Thus, substantial evidence supported the court's determination minor was not a member or eligible for membership in LV Paiute.

C.      ELIGIBILITY OF MINOR FOR MEMBERSHIP IN FALLON

Father contends the department was required to determine whether minor was eligible for membership in Fallon since that tribe responded that mother was eligible. We disagree.

As discussed above, we hold father forfeited the issue by failing to raise it in his petition for extraordinary writ. (*Z.W.*, *supra*, 194 Cal.App.4th at p. 67.) Moreover, we hold the department's obligation with regard to notice extends only insofar as ensuring notice to the relevant tribes with the pertinent information by certified mail with return receipt requested. Here, the department fulfilled that obligation with respect to Fallon.

11

Moreover, again, the department had no obligation or authority to dictate to the sovereign tribe the form of its response or how it should conduct the determination of tribal membership or eligibility.  Here, Fallon responded with its own eligibility criteria: "In order to be an eligible member of the Fallon Paiute Shoshone Tribe, you must possess **1/8 Fallon Paiute and or 1/8 Fallon Shoshone Indian Blood, and be a direct descendant of a person whose name appears on the 1940 Reservation Census, the 1940 Colony Census, or the Fallon Allotment Schedule**."  It determined mother was eligible for membership, but minor was not:  "[T]he child does not meet the definition of Indian Child.  Therefore, there is no need for further notification to the Tribe."  Again, this is logically due to the fact that minor was one degree of consanguinity removed from mother.  Thus, substantial evidence supported the juvenile court's determination minor was not an Indian child.

### D.    HARMLESS ERROR

To the extent the department was required to make any further inquiries of the Indian tribes, such that the juvenile court's determination that minor was not an Indian child lacked sufficient evidence, we hold any error harmless.

"A deficiency in notice may be harmless when it can be said that, if proper notice had been given, the child would not have been found to be an Indian child and the ICWA would not have applied.  [Citations.]"  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1530.)  This court has previously held that defective ICWA notice as to one sibling is harmless when there has been good ICWA notice as to another sibling who has been found not to

be an Indian child.  (*In re E.W.* (2009) 170 Cal.App.4th 396, 400-403 [Fourth Dist., Div. Two].)  That is the case here.  We conclude the error was harmless.

Here, minor and R.K. share the same mother.  It is through the minor's maternal lineage that father makes his ICWA claims.  The department noted in this case mother "did not give any new tribes that child/mother may have heritage."  It noted the previous juvenile court found ICWA did not apply to R.K.

The record in the prior case supports that conclusion.[4]  The department sent notice to Timba-Sha in that case, which responded by letter that R.K. was neither enrolled nor eligible for membership in the tribe and the tribe would not intervene.  LV Paiute responded the child was not enrolled and it would not intervene.  Fallon responded R.K. was neither enrolled nor eligible and it would not intervene.  Notice was sent to Lone Pine and the requested receipt was returned.  On December 29, 2010, the juvenile court found ICWA did not apply.  Thus, even if insufficient evidence supported the juvenile court's determination in the instant case that ICWA did not apply, any error was harmless because substantial evidence supported the previous court's determination that R.K. was not an Indian child; therefore, further notice would have been futile.

---

[4]  We take judicial notice of (1) mother's ICWA-020 form dated October 4, 2010; (2) the department's notice of child custody proceeding for Indian Child dated October 20, 2010; (3) the department's ICWA declaration of due diligence dated October 20, 2010; (4) the department's ICWA declaration of due diligence dated November 23, 2010; (5) the department's ICWA declaration of due diligence dated December 13, 2010; (6) and the minute order dated December 29, 2010, in R.K.'s dependency case, San Bernardino Superior Court case No. J235159.  (Evid. Code, § 452, subd. (d).)

13

We acknowledge this case differs from *In re E.W.*, *supra*, in the fact it involves siblings from separate dependency proceedings occurring at different times. Nonetheless, we see no reason it should not apply here "based on considerations of judicial economy, the assured futility of providing identical notice regarding [minor], and the [minor's] need for stability. Even a conditional reversal with limited remand would be an empty formality and a waste of ever-more-scarce judicial resources." (*In re E.W.*, *supra*, 170 Cal.App.4th at pp. 401-402.) Minor "deserve[s] permanence and stability as soon as possible. We cannot condone delaying that permanence for an empty exercise with a pre-ordained outcome, especially where that exercise does nothing concrete to further the purposes of ICWA[.]" (*Id*. at p. 402.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                        J.

We concur:

KING _____
            Acting P. J.

CODRINGTON _____
                        J.

14