Filed 5/10/22  In re J.T. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re J.T., a Person Coming Under the Juvenile Court Law. | C094266 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY, Plaintiff and Respondent, v. K.P. et al., Defendants and Appellants. | (Super. Ct. No. JV2019261) |

This is the second appeal filed by appellants K.P. (mother) and A.T. (father) after termination of their parental rights.  (Welf. & Inst. Code, § 366.26.)[1]  In the previous appeal, this court accepted the parties' joint application and stipulation for a reversal and conditionally reversed and remanded for limited proceedings to ensure compliance with

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.). In this appeal from the juvenile court's orders reinstating the orders terminating their parental rights and freeing the minor for adoption, mother and father again contend the juvenile court and the Yolo County Health and Human Services Agency (Agency) failed to comply with the requirements of ICWA. Because mother and father failed to object in the juvenile court on specific grounds asserted in this appeal, their claims are forfeited. We will affirm the orders terminating parental rights.

BACKGROUND

The minor's half sibling A.E. was removed from mother's care in 2015 due to substance abuse by mother and the half sibling's father. (*In re A.E.* (Feb. 26, 2018, C084468 [nonpub. opn.].) The initial orders terminating parental rights as to the minor's half sibling were conditionally reversed and remanded for further ICWA compliance related to mother's claim of Indian ancestry. (*Ibid.*)

The minor in this case, J.T., was previously removed from mother and father's care upon his birth in July 2016, during the pendency of his half sibling's appeal as a result of mother and father's substance abuse. (*In re A.E.*, *supra*, C084468.) At that time, mother reported she had Blackfeet and/or Cherokee ancestry and father reported he may have Indian heritage but did not know with what tribe. The Agency completed an ICWA-030 form and noticed the Blackfeet tribe, the three Cherokee tribes, and the Bureau of Indian Affairs (BIA). On September 13, 2017, the juvenile court found ICWA did not apply. Thereafter, on August 15, 2018, the Cherokee Nation[2] sent a letter to the Agency reporting that it had examined the tribal records and neither the minor nor his

---

[2] Although it is sometimes known as the Cherokee Nation of Oklahoma, the tribe's letterhead and name in the Federal Register is "Cherokee Nation" and that is the name used by the Agency and the tribe. (84 Fed.Reg. 20408 (May 9, 2019); 85 Fed.Reg. 24015 (Apr. 30, 2020).)

half sibling A.E. were Indian children. In that case, father's reunification services were terminated, mother was awarded legal and physical custody of J.T., and dependency jurisdiction was terminated in November 2018.

A new section 300 petition was filed on behalf of minor J.T. on August 6, 2019, again based on mother and father's ongoing substance abuse and on mother's loss of parental rights as to the minor's half sibling. The minor was detained. The Agency attached an ICWA-010 form to the petition reflecting that in July 2016, mother had indicated she may have Blackfeet and/or Cherokee ancestry and father was unsure if he had Indian ancestry. At the detention hearing, the Agency noted that the juvenile court had previously, in September 2017, made findings that ICWA did not apply, and requested that mother and father fill out new ICWA forms. The juvenile court told mother and father they needed to complete the forms. The juvenile court also asked if there was "[a]nything new on ICWA?" Mother's counsel responded "no." Father's counsel did not respond. The juvenile court stated, "This is a non-ICWA child. I want the documentation though, okay?"

On August 7, 2019, mother signed an ICWA-020 form denying she had any Indian ancestry. Father signed a form indicating he "may have Indian ancestry" but did not name any tribes or bands. The August 7, 2019 orders indicate the juvenile court found ICWA did not apply.

Prior to the section 366.26 hearing, county counsel advised the social worker to re-notice the tribes. The Agency sent ICWA-030 forms containing mother's familial information to the Blackfeet, Cherokee, and Apache tribes, as well as the BIA. The Cherokee Nation responded by e-mail that it had previously determined J.T. was not an Indian child in 2018 and, without any new information to research, the 2018 determination would remain. All of the remaining tribes either responded that the minor was not an Indian child or failed to respond. The Agency asked the juvenile court to find that ICWA did not apply.

3

On June 24, 2020, the juvenile court addressed ICWA, asking if any counsel had an objection to the recommendation that it find ICWA did not apply. Mother and father's counsel did not object and the juvenile court again found the minor was not an Indian child.

The contested section 366.26 hearing took place on July 24, 2020, after which the juvenile court found ICWA did not apply, terminated parental rights, and freed the minor for adoption. Mother and father appealed.

After mother and father's opening briefs were filed, the parties jointly applied for a reversal of the orders terminating parental rights and immediate issuance of the remittitur based upon a joint declaration and stipulation that the Agency and the juvenile court failed to comply with the inquiry and notice requirements of ICWA. This court accepted the stipulation of the parties to reverse the orders terminating parental rights and remanded the case to the juvenile court for further proceedings to address compliance with the requirements of ICWA. Specifically, this court directed the juvenile court "to conduct further proceedings limited to the issue of compliance with the provisions of [ICWA]. If the juvenile court concludes that inquiry and notice has occurred and the minor is not an Indian child, the orders terminating parental rights shall be reinstated. If, after proper notice to the tribes, the juvenile court determines [ICWA] applies because the minor is an Indian child, the juvenile court shall schedule a new hearing pursuant to Welfare and Institutions Code section 366.26 and proceed in accordance with the Act." Remittitur issued on December 4, 2020.

In response to the stipulation for reversal, the Agency interviewed father and six of the paternal relatives and family friends. Vicky T., the mother of father's older children, reported that father's biological mother had died when she was 40 years old and that father was raised by his stepmother. Vicky T. completed DNA research on the children she shared with father and learned, through Ancestry, that the paternal grandmother

4

might have Cherokee Nation ancestry. Vicky T. provided the Agency with the name of the paternal grandmother, her date of birth, and her approximate date of death.

The paternal aunt also reported that, as a child, her family traveled through Bakersfield and she and her siblings were warned not to go to the window at night because the people from the Tehachapi tribe would come down from the mountain and speak to the maternal great-grandfather. The aunt agreed to speak to some older relatives about possible Indian ancestry.

The Agency's social worker completed a new ICWA-030 form containing the new information about father's family members. Having determined the Tehachapi tribe is not a federally recognized tribe, the Agency served the notice on the Tejon tribe because their ancestral homeland included the Tehachapi mountains. The Agency also served the form on the Cherokee Nation and the BIA.

At the January 21, 2021 post-remand hearing, father's counsel reported that father's biological great-grandfather was a member of the Tehachapi tribe, which is associated with the Tejon tribe, and that father would provide the information he gathered to the social worker. The Agency requested, and the juvenile court agreed, to have father provide that information on the record. Father provided the name of his grandmother and great-grandfather, both deceased, and promised to provide birth dates to the social worker. The juvenile court ordered father to provide the birth dates within three days and the matter was continued to March 18, 2021.

In an updated report, the Agency reported the Tejon tribe had responded on February 3, 2021, that neither father nor the minor were members of the tribe. That same day, the Agency served updated notice on the Tejon tribe with the newly acquired information about father's grandmother and great-grandfather, but no additional response was received. The Agency also provided the newly acquired information about father's grandmother and great-grandfather to the Cherokee Nation via e-mail. The Cherokee Nation replied via e-mail that neither the parents nor the minor were members and the

5

minor is not an Indian child in relation to the Cherokee Nation, but the tribe had not sent an "official notification" of such. Via a series of exchanges, the social worker was informed an official response would be generated once the notice was fully researched and processed. The juvenile court continued the matter to April 29, 2021, so the tribe could provide its "official word" or "official letter."

On April 16, 2021, the social worker spoke to the Cherokee Nation eligibility supervisor to inquire about the formal response. The supervisor said the tribe was behind on processing requests and she expected it would be done before April 22, 2021. At the April 29, 2021 hearing, the juvenile court noted the Cherokee Nation had provided unofficial notice that the minor is not an Indian child but had not indicated they were still conducting further inquiries themselves. Counsel for mother and father argued the juvenile court should wait for the official confirmation letter before making its final ICWA findings. The juvenile court stated it was still uncertain whether the Cherokee Nation had completed its review but had not yet issued a formal letter, or whether there was still some further level of review. It continued the matter to May 27, 2021, to give the Cherokee Nation more time to send a formal letter.

At the May 27, 2021 hearing, the juvenile court noted it had received that day an e-mail from the eligibility supervisor for the Cherokee Nation indicating that the minor is not an Indian child.[3] The juvenile court further noted there was nothing in the e-mail indicating any further review was anticipated. The Agency took the position that there was no requirement a tribe's response be in any particular form and the e-mail was the official notification for which they had been waiting. The juvenile court asked for

_____

[3] The e-mail read: "As this child has been previously determined to not be an 'Indian child' and we have not processed any new notices received, I am only assuming the identifying information for the child and parents have not changed. If that is so, then our determination that [J.T.] is not an Indian child will remain and Cherokee Nation is not authorized to participate in any hearings where there is no Indian child."

6

comment from mother and father's counsel. Mother's counsel stated she "would just object that ICWA has been satisfied here. We are here on appeal and we've been waiting for sort of an official letter. I would suggest that this e-mail isn't really much more than what we've already had. The [juvenile court] has been waiting for sort of the official notification. That's always been the basis for the continuance previously. [¶] So I would -- I would disagree that this is sufficient and I would ask the [juvenile court] to again continue and wait for official notification." Father's counsel responded, "I would join the position of the mother and [mother's counsel] for the same reasons. As I understood it, we were waiting for some sort of formal notification from the Tribe. As I also understood, the Agency has a very similar e-mail to the last time we appeared in court, and the [juvenile court] continued the matter in hopes we would have something more formal as far as notification from the Tribe. [¶] Based on that, I would object to the e-mail sufficing as proper ICWA notice . . . ."

The juvenile court explained that the reason it continued the proceedings for further word was not because the response had to be in a specific form, but because it understood the tribe anticipated providing some further official notice. Thus, the juvenile court had believed it was premature to proceed when the tribe was indicating more of a response was coming. But the juvenile court found the most recent e-mail to have "all the hallmarks of finality," so the juvenile court would accept it as the tribe's determination that the minor is not eligible. The juvenile court found ICWA inquiry and notice provisions had been fulfilled, found the minor not to be an Indian child, and reinstated the orders terminating parental rights. Mother and father appealed.

DISCUSSION

In this appeal, mother and father contend we must again reverse the termination of parental rights based on compliance with ICWA. They argue there was (1) inadequate inquiry as to father's relatives, (2) a failure to provide post-remand ICWA notice containing additional information about father's family to the United Keetoowah Band of

7

Cherokee or the Eastern Band of Cherokee, (3) improper notice and information to the Cherokee Nation, (4) a lack of clarity in the Cherokee Nation's e-mail response, (5) inadequate timing of the notice to the Tejon tribe, and (6) a failure by the Tejon tribe to provide a response to the updated information it received.

However, mother and father did not assert these specific arguments in the juvenile court. In the context of this second appeal after remand for ICWA compliance, their claims are forfeited.

It is true that in general, the forfeiture doctrine does not bar consideration of ICWA inquiry and notice issues not raised in the juvenile court. " 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be [forfeit]ed by the parent.' [Citation.] A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

Nevertheless, where, as here, a case is remanded to the juvenile court for the sole purpose of curing ICWA inquiry and notice defects, the parents are represented by counsel at the post-remand compliance hearing, and counsel does not raise the specific objections in the juvenile court that are subsequently asserted on appeal, an exception to the general rule applies and a second round of appellate attacks on ICWA compliance is not permitted. Congress did not intend to allow successive appeals raising issues for the first time in the appellate court. (*In re X.V.* (2005) 132 Cal.App.4th 794, 804-805.) At some point the rules of error preservation must apply to avoid delay of permanence for children. (*Ibid*.)

The previous appeal resulted in a stipulated reversal for the express purpose of allowing for inquiry and notice with respect to father's claim of possible Indian ancestry. The parties were represented by counsel on remand. They were well informed via the Agency's reports, copies of notices and e-mails, and oral reports and discussions in court,

8

about the inquiry made of the relatives, the tribes being notified and the manner thereof, the information shared with those tribes, and the timing and wording of the responses received. Yet, even though the juvenile court provided the parties with ample opportunity to raise any concerns with respect to the inquiry and notice on remand, the only objection made was one not raised on appeal -- that the Cherokee Nation had not provided its response in a formal letter but had instead submitted an e-mail determination. None of the contentions of error or alleged inadequacies mother and father now raise on appeal were raised by the parties in the juvenile court.

This is the minor's second time in the dependency system, where he has spent nearly his entire life. "As a matter of respect for the children involved and the judicial system, as well as common sense, it is incumbent on parents on remand to assist the Agency in ensuring proper notice is given." (*In re X.V.*, *supra*, 132 Cal.App.4th at p. 804.) Had mother and father assisted the Agency in addressing their concerns, or raised their concerns in the juvenile court, the Agency and juvenile court could have addressed the concerns without further delaying permanency for the minor. (*In re Amber F*. (2007) 150 Cal.App.4th 1152, 1156.) "At some point, there must be finality to the ICWA noticing process." (*In re Z.W.* (2011) 194 Cal.App.4th 54, 67.) Allowing parents to raise inquiry and notice issues on second appeal after failing to raise those issues in the juvenile court at the post-remand compliance hearing would further prolong the proceedings to the detriment of the child. (*In re Amber F*., at p. 1156; *In re X.V.,* at p. 804; *In re N.M.* (2008) 161 Cal.App.4th 253, 269-270.)

Numerous cases have held that, where a matter has been remanded for ICWA notice error, the parties may not object to the adequacy of ICWA notice on a new appeal if they failed to raise a proper objection at the hearing after remand. (*In re Amber F*., *supra*, 150 Cal.App.4th at p. 1156; *In re X.V., supra*, 132 Cal.App.4th at p. 804; *In re N.M.*, *supra*, 161 Cal.App.4th at pp. 269-270; *In re Z.W.*, *supra*, 194 Cal.App.4th at p. 67.) Appellants have provided no reason they should be exempted from the

9

requirement they first raise their ICWA notice and inquiry concerns in the juvenile court before making such challenges in a successive appeal.

DISPOSITION

The orders terminating parental rights are affirmed.


         /S/          <br>
MAURO, J.

We concur:


     /S/          
RAYE, P. J.


     /S/          
HOCH, J.

10