Filed 7/31/13  In re A.D. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| In re A.D. et al., Persons Coming Under the Juvenile Court Law. | |
| SUTTER COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> L.B., <br><br> Defendant and Appellant. | C069972 <br><br> (Super. Ct. Nos. DPSQ106566, DPSQ106567, DPSQ106568) |

L.B., mother of the minors, appeals from orders of the juvenile court entered at the 18-month review hearing.  (Welf. & Inst. Code, §§ 366.22, 395.)  Mother challenges the adequacy of the notices given pursuant to the Indian Child Welfare Act (ICWA; 25 U.S.C § 1901 et seq.).  Mother further contends the juvenile court erred in decreasing the frequency of her visitation after terminating her reunification services.

We conclude that the juvenile court did not err in decreasing visitation, but reverse and remand for compliance with the ICWA.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In March 2010, the Sutter County Department of Human Services (the Department) sought removal of the three minors, A.D., age three, Ka.B., age two, and Ke.D., age seven months, from parental custody because the parents, despite voluntary services, were unable to control the minors and severely neglected them. The court returned the minors to father's care, but, within weeks, they were again detained due to ongoing neglect.

The court ordered reunification services for the parents. Mother's services were extended to 18 months, during which time mother had visits several times a week. Also during this period, the minors had an unsuccessful three-month trial visit in mother's home and were returned to foster care. After a lengthy hearing, the court terminated mother's reunification services and set visitation at two times a month.

We discuss additional facts and procedural events in the Discussion.

## DISCUSSION

### I. ICWA Notice Compliance

Mother contends the Department and the juvenile court failed to comply with the notice requirements of the ICWA. Mother asserts that there was incomplete or inaccurate information regarding father's paternity in the notices, the notices did not state what Indian heritage father claimed, and the return receipts and responses from the tribes were not filed with the court as required.

### A. Background

Early in the proceedings, mother completed the Parental Notification of Indian Status (ICWA-020) form indicating there may be Cherokee and Blackfeet heritage on her father's side. At the intake appointment on March 9, 2010, father declined to sign the form without consulting his attorney.

The Department sent the first ICWA notice at the end of March 2010. The form listed father as the biological father with the word "Legal" in parentheses after his name.

2

However, all the boxes for question six, dealing with father's paternity status, were marked "Unknown" for all three minors despite the fact that father's name appeared on Ke.D.'s birth certificate.[1] In the box labeled "Tribe or band, and location," for father, the form stated, "No information available." The ICWA-030 notice form and the certified mail receipts for each minor were filed, but the signed return receipts were not, nor were any tribal responses.

At the jurisdiction hearing in April 2010, father had not signed an ICWA-020 form, but he and his counsel represented that he claimed Cherokee and Blackfeet ancestry. Further, at the hearing father acknowledged paternity of the three minors. Additionally, the report for the hearing indicated father had been adjudicated father for A.D. and Ka.B. in February 2008, and had signed a declaration of paternity for Ke.B., which was received by the Department of Vital Statistics in July 2009. Without expressing an opinion or objecting as to the adequacy of the notices, counsel for both parents agreed that all the tribes claimed by either parent had been noticed.

Later in April 2010, the Department sent a second ICWA-030 notice to the Cherokee and Blackfeet tribes. The information contained in the second notice was the same as the information contained in the first notice, even though there was now information available to provide answers regarding paternity in question six and to indicate father's claims of tribal heritage. The disposition report stated father had not completed an ICWA-020 form or provided relative information that would enable the tribes to research his claim. The report further stated that notices would be sent when the information was provided.

---

[1] Question six on the ICWA-030 notice form asks, in part, if: "a. ☐ Biological birth father is named on birth certificate.
   "b. ☐ Biological birth father has acknowledged parentage.
   "c. ☐ There has been a judicial declaration of parentage."

3

A third ICWA-030 notice was sent in June 2010, prior to an interim review hearing. Again, the information contained in the form was identical to that previously provided. The boxes labeled "Unknown" were still checked on question six pertaining to paternity, and the box regarding father's "Tribe or band, and location" still stated "No information available." The report for the interim hearing stated that the Eastern Band of Cherokee Indians, the Cherokee Nation and the Blackfeet Tribe had responded that the minors were not eligible to be considered Indian children. The responses were not filed with the court.

The six-month review report stated that the social worker called father in September 2010 regarding the ICWA-020 form. Father said he had turned it in at the March 2010 intake appointment. However, the notes from that appointment indicated he had not done so and that he wanted to discuss the matter with his attorney before completing the form. During the September 2010 telephone conversation, father told the social worker he believed his aunt may be Cherokee, but was not sure she had the same father as his mother. Father again indicated he preferred to discuss this matter with his attorney before completing the form. The 12-month review report in April 2011 said that father still had not provided any information about his Indian heritage and asked the court to find that the minors were not Indian children. At the review hearing, the court found that the ICWA did not apply.

### B. Adequacy of the Notices

The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) If, after the petition is filed, the court "knows or has reason to know that an Indian child is involved," notice of the pending proceeding and the right to intervene must be sent to the tribe, or to the Bureau of Indian Affairs if the tribal affiliation is not known. (25 U.S.C. § 1912; Welf. & Inst. Code, § 224.2; Cal. Rules of Court, rule 5.481(b).)

4

The ICWA definition of "parent" is any biological parent of an Indian child, but the term "does not include the unwed father where paternity has not been acknowledged or established." (25 U.S.C. § 1903(9).) Thus, while an "Indian child" is an "unmarried person who is under age eighteen and . . . (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 U.S.C. § 1903(4)), if the member of the Indian tribe is an unwed father, paternity must be acknowledged or established before the child can be determined an Indian child (25 U.S.C. § 1903(9)).

State statutes, federal regulations and the federal guidelines on Indian child custody proceedings all specify the contents of the notice to be sent to the tribe to inform the tribe of the proceedings and assist the tribe in determining if the child is a member or eligible for membership. (Welf. & Inst. Code, § 224.2; 25 C.F.R. § 23.11(a), (d), (e) (2012); 44 Fed.Reg. 67584, 67588 (Nov. 26, 1979) ["B.5 Notice Requirements"].) If known, the agency should provide the name of the tribe in which membership is claimed. (Welf. & Inst. Code, § 224.2; 25 C.F.R., *supra*, § 23.11(a), (d), (e); 44 Fed.Reg., *supra*, p. 67588 ["B.5 Notice Requirements"]; *In re D.T*. (2003) 113 Cal.App.4th 1449, 1454-1455.)

Therefore, the notice must contain both the name of the tribe in which membership is claimed and, in the case of an unwed father, some indication that his paternity has been acknowledged or adjudicated. Without these basic pieces of information, no tribe would consider researching its records for the unwed father since, by the terms of the notice, he would not be relevant in the determination of whether the minor was eligible for tribal membership. The inclusion of the word "Legal" after father's name here, without more, would not have alerted the tribe that this qualified father as a parent within the meaning of the ICWA. Notices come to the tribes from various jurisdictions whose rules may differ on the elements necessary to establish a "legal" father, assuming that term

5

would even be used in all jurisdictions.[2]  Thus, the agency sending the notice must provide the tribe with information adequate to determine if the unwed father qualifies as a " 'parent' " under the ICWA.  (25 U.S.C. § 1903(9).)  The ICWA-030 form question six is the official place for this information.

The Department asserts that at the jurisdictional hearing, counsel for mother and father agreed the ICWA notices had been properly given.  Neither counsel objected as to the adequacy of the notices.[3]  However, this does not forfeit consideration of the ICWA notices here.  (*In re Z.W.* (2011) 194 Cal.App.4th 54, 63 ["Generally, the forfeiture doctrine does not bar consideration of ICWA notice issues not raised in the juvenile court"].)  As this court observed in *In re Justin S.* (2007) 150 Cal.App.4th 1426, " 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be waived by the parent.'  [Citation.]  A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court."  (*Id*. at p. 1435.)

---

[2]  Indeed, as mother points out, the word "legal" could have been read as an indication that father's listed name was his legal name.

[3]  On this point, the following colloquy occurred:

THE COURT:  "So they can make the finding at this point that the tribes which were noticed, all of the Indian tribes which -- any Native American Heritage that exists on the part of either mother or father or both; is that correct?"

COUNSEL FOR FATHER:  "I believe so, yes."

THE COURT:  "For the mother?"

COUNSEL FOR MOTHER:  "I believe so, your Honor."

THE COURT:  "We'll proceed on that basis."

The Department asserts father was not forthcoming in providing Indian heritage information and refused to sign the ICWA-020 form. The Department further asserts that the information provided by father did not meet the "reason to believe" standard in *In re Kahlen W*. (1991) 233 Cal.App.3d 1414. In that case, the court held, "The Indian status of the child need not be certain. Notice is required whenever the court knows or has reason to believe the child is an Indian child." (*Id*. at p. 1422.) Subsequently, the Legislature established the standard as "knows or has reason to know" an Indian child is involved. (Welf. & Inst. Code, § 224.2, subd. (a); see also *id.*, subd. (b) ["whenever it is known or there is reason to know"]; see also Cal. Rules of Court, rule 5.481(a)(4).) One circumstance that may provide a "reason to know" is when a person having interest in the child "provides information *suggesting* the child is a member of a tribe or eligible for membership in a tribe or one or more of the child's biological parents, grandparents, or great-grandparents are or were a member of a tribe." (Welf. & Inst. Code, § 224.3, subd. (b)(1), italics added; see also Cal. Rules of Court, rule 5.481(a)(5)(A).) Thus, " 'the juvenile court needs only a *suggestio*n of Indian ancestry to trigger the notice requirement.' [Citation.]" (*In re Hunter W*. (2011) 200 Cal.App.4th 1454, 1466, italics added.) Accordingly, while father's apparent lack of cooperation excuses the lack of information the Department could provide, it does not excuse the Department's failure to include the information that father claimed he might have Cherokee or Blackfeet heritage, or the failure to adequately describe father's paternity status in question six.

The forms did not provide known information important to the tribes' determinations. Reversal and remand is required to permit proper notice to be sent to the tribes.

### C. ICWA Filing Claim

Welfare and Institutions Code section 224.2, subdivision (c) and rule 5.482(b) of the California Rules of Court require that copies of the ICWA-030 notices and all return receipts and responses received be filed with the court. While the notices and certified

7

mail receipts were filed here, no return receipts or responses were filed.  This error is subject to harmless error review.  (*In re S.B.* (2009) 174 Cal.App.4th 808, 812-813 (*S.B.*).)

Because the notices themselves are part of the record, mother's claim that the notices were deficient could be, and has been, addressed.  Mother makes no claim that the notices were sent to incorrect addresses or that responses contained incorrect information beyond a denial of eligibility for tribal membership.  Mother speculates that, because of errors in the content of the notices, it cannot be presumed that all the notices were sent or received.  We disagree.  Three of the four tribes responded to the notice and there is no reason to believe that notice to the fourth tribe was not sent and received in due course whether or not that tribe responded.  (*S.B.*, *supra*, 174 Cal.App.4th at pp. 812-813.)  We conclude any error in failing to file the return receipts and responses here was harmless.  Further, we agree with the court in *S.B.* that counsel for the parents bear a responsibility to raise prompt objections in the juvenile court so that errors can be timely corrected.  (*Id.* at p. 813.)  Counsel had several opportunities to do so before the court found that the ICWA did not apply.  Had counsel done so, the expense and delay of the additional notice we order here would have been avoided.

## II.  Visitation

Mother argues the juvenile court abused its discretion in decreasing her visitation to twice a month after terminating her reunification services.  She contends that visits are required pending the Welfare and Institutions Code section 366.26 hearing unless the visits are found to be detrimental.

We agree that the juvenile court is "*required* to permit continued visitation pending the [Welfare and Institutions Code] section 366.26 hearing absent a finding visitation would be detrimental" to the minor.  (*In re David D.* (1994) 28 Cal.App.4th 941, 954 (*David D.*); Welf. & Inst. Code, § 366.22, subd. (a), 3d par.)  Here, the court did not find visitation would be detrimental and permitted continued regular visitation, but

8

with reduced frequency. Nothing in the statute prevents the court from decreasing the frequency of visitation. The previous schedule of visits several times a week was appropriate when the goal was the minors' reunification with mother. However, after services were terminated, the goal changed to providing permanence and stability for the minors. (*In re Marilyn H*. (1993) 5 Cal.4th 295, 309.) The court could reasonably conclude that decreasing the frequency of visits while allowing continued contact furthered this goal.

Mother relies heavily on this court's decision in *In re David D*. That case is clearly distinguishable, because the juvenile court there allowed only one final visit after the termination of reunification services and the court made that order despite expert testimony and other evidence concerning the bond between the minors and mother. (*David D.*, *supra*, 28 Cal.App.4th at pp. 944, 946-948, 949.) Moreover, the curtailment of visitation in that case actually occurred before reunification services were terminated. This court concluded the reunification services that had been provided were inadequate because the juvenile court had prohibited visitation during reunification, reasoning that there was no meaningful distinction between what the juvenile court did and a case in which no reunification plan was ever developed. (*Id*. at pp. 952-954.) Here, in contrast, there is no claim mother's reunification services were inadequate or that visitation had been curtailed during reunification. Nor is there expert testimony indicating that a reduction of visitation would be detrimental to the minors. Further, the juvenile court here did not completely cut off visitation as the court effectively did in *David D*. Instead, the juvenile court continued visitation at a rate consistent with what this court has implied might be appropriate after reunification services have been terminated. (*David D.*, *supra*, 28 Cal.App.4th at p. 955, fn. 10 [the single visitation ordered by the juvenile court "rather than, for example, a visit once weekly or once monthly," cannot be deemed adequate visitation within the meaning of Welfare & Institutions Code section 362.1].)

9

Under the circumstances here, the juvenile court did not unreasonably limit visitation after reunification services were terminated. Thus, the court did not abuse its discretion.

## DISPOSITION

The orders terminating mother's reunification services are reversed. The matter is remanded for the limited purpose of sending notice to the tribes, if it has not already been sent, containing all known information. The juvenile court shall order the Department to comply promptly with the notice provisions of the ICWA. Thereafter, if there is no response, or if the tribes determine the minors are not Indian children, the orders shall be reinstated. However, if a tribe determines the minors are Indian children, the juvenile court is ordered to conduct a new review hearing in conformance with all provisions of the ICWA.

                                                        MURRAY                    , J.

We concur:

                    RAYE                    , P. J.

                    ROBIE                    , J.

10