Filed 10/20/15  In re R.G. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.G. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E063512 |
| Plaintiff and Respondent, | (Super.Ct.Nos. J251944, J251945, J251946) |
| v. | O P I N I O N |
| L.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Jamila Bayati and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

On May 5, 2015, the juvenile court terminated defendant and appellant, L.H.'s (Mother), parental rights as to minors R.S.G. (born June 2007) and R.A.G. (born August 2009) (collectively, the minors). On appeal, Mother contends the court erred in determining the minors were not Indian children within the meaning of the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901, et seq.) We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

On October 31, 2013, social workers with plaintiff and respondent, San Bernardino County Children and Family Services (the department), received a referral alleging absence, incapacity, and general neglect by Mother. Mother's son, J.O.[1] (born April 1998), had been admitted to the hospital on October 26, 2013, for a diabetic medical emergency. Mother had only sporadically visited him while he was in the hospital. J.O. was scheduled for release on October 30, 2013; however, Mother failed to pick him up.

The social worker went to a couple of addresses she was provided for Mother and found them empty. Neighbors told her the family had moved out. None of the minors had been enrolled in school. Mother called the hospital and spoke with the social worker, but refused to provide an address. Mother said she planned on taking the children to live with a friend, but refused to provide that address as well.

---

[1] J.O. is not a subject of the instant appeal because Mother's parental rights as to J.O. were not terminated. However, the facts pertaining to J.O. will be discussed where relevant to the instant appeal.

Mother refused to provide the social worker access to the minors. The social worker informed Mother that unless she provided such access, the social worker would obtain a warrant for protective custody of the minors. Mother agreed to bring the minors to an office at the department. She failed to do so.

On November 1, 2013, Mother called the social worker to inform her Mother was getting a new apartment and would bring the minors to the department office on November 4, 2013, or to the detention hearing on November 5, 2013.

Mother appeared at the detention hearing on November 5, 2013, but did not bring the minors. Mother's counsel advised the court that Mother reported the minors were with their 19-year-old sibling for whom Mother had no contact information. Mother purportedly had attempted to locate the minors, to no avail. Mother indicated tribal ancestry through "Jemes Pueblo [the tribe] and Cheyenne Arapaho." On the same date, Mother filed an ICWA-020 form indicating: "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe," specifically, "Jemez PLB New Mexico and Cheyanne Arapajo."

The court found ICWA may apply, detained minors, ordered Mother to drug test, ordered Mother to produce the minors' birth certificates, and issued a warrant of protective custody pertaining to the minors.

In the jurisdiction and disposition report filed November 21, 2013, the social worker noted the minors' whereabouts were still unknown. On November 13, 2013, the social worker had gone to the address given by Mother as her address at the detention

3

hearing. A man therein informed the social worker he did not know Mother and neither she nor the children lived there. On November 20, 2013, the social worker spoke by telephone with Mother, who said she was at a previous residence. The social worker asked if she could come interview her; Mother responded that she had an appointment she could not miss.

At the hearing on December 26, 2013, Mother stated that the whereabouts of the minors were still unknown. Counsel for the department stated: "[M]other claimed Indian ancestry at the time of the detention; however, she did not make herself available to the social worker for the ICWA interview, so there is no notice. [¶] In addition, Mother's counsel provided to us a notice from the tribe today stating that the tribe might intervene. So at th[is] point, we're not able to proceed." Father's counsel countered that the notice "does not say that they will intervene. What it says is that Mother is a registered member of the Pueblo Jemes Tribe in New Mexico . . . ."[2] The court found good cause to continue the matter for ICWA inquiry and ordered Mother to participate in an ICWA interview.

On January 16, 2014, a notice of child custody proceeding for an Indian child was mailed to Mother and the ICWA representative of the tribe. The notice contained information regarding mother's birthplace, birth date, purported tribal affiliation, purported tribal enrollment number, and former address. It listed the maternal

---

[2] The purported notice of potential tribal intervention or confirmation of Mother's tribal membership is not contained in the record. Later information reflects Mother had once been, but was no longer, an enrolled member of the tribe.

4

grandmother's name, state of birth, and date of death.  It listed the maternal grandfather's name.  All other information regarding Mother's ancestry was listed as unknown or unavailable.[3]

Attached to the notice was Mother's certificate of degree of Indian blood.  It certified Mother possessed "the specified degree of Indian Blood as identified on the census rolls maintained by the Pueblo of Jemez."  That degree was one-quarter Jemez and one-quarter Cheyenne.  The certificate additionally reflected:  "This document does not constitute official affiliation, or confer enrollment with, or membership in, the referenced tribe(s)."  (Capitalization & underlining omitted.)  On the same date, the social worker filed an ICWA declaration of due diligence.

In an addendum report filed January 21, 2014, the social worker recommended denying Mother reunification services.  The social worker contended Mother failed to provide the social worker with an address because Mother knew the whereabouts of the minors even though she continued to deny it.  On January 21, 2014, counsel for the department requested the matter be continued "to get a response back from the tribe." The court continued the matter to February 19, 2014, finding that ICWA noticing was not complete.  On February 14, 2014, another ICWA declaration of due diligence was filed.

---

[3] The minors' father never appeared in the proceedings below.  Mother indicated his whereabouts were unknown.  She reported he had been arrested and deported.  Father was later found to have been released to the border patrol and the Immigration and Naturalization Service on June 20, 2013.  The Mexican Consulate was consulted on November 6, 2013, and was unable to locate him.

In an addendum report filed February 19, 2014, the social worker noted the minors' whereabouts were still unknown. The social worker indicated she "had limited contact with the [M]other . . . . The [social worker] only has contact with the [M]other at court, on the dates of the hearings, or when the [M]other calls the undersigned, which has only happened on three . . . separate occasions. The [social worker] has been unable to contact the [M]other at any of the addresses that she has provided . . . ."

On January 22, 2014, the social worker spoke with Annette Gachupin, an ICWA social worker for the Pueblo of Jemez Social Services in New Mexico. Gachupin said Mother's registration in the tribe needed to be renewed. She said minors "are not registered members and could not be registered because of their blood quantum. She stated that the children can be naturalized by the Tribe but not registered. Ms. Gachupin stated that because the children are not registered members[,] the Jemez Tribe would not intervene but the Tribe would like to be informed of the status of the children. She also informed the [social worker] that she provided the [M]other with information and instructions of what the [M]other needed to do to have the children naturalized by the Jemez Tribe." Membership in the tribe required a minimum blood quantum of one-fourth Pueblo, whereas the minors had only one-eighth.

The social worker attached a letter from the tribe in which its representative indicated Mother and J.O. "are in the Jemez census book, but would need to reapply for Jemez Membership and at that time it would be determined if [J.O.] would be a naturalized member. [Minors] would be eligible for tribal naturalization. Mother needs

6

to submit Birth certificates of the minor children to the Tribal Enrollment office," an employee of which had been in contact with them.

The social worker additionally attached a declaration from an Indian expert witness. The expert indicated he had spoken with Gachupin on February 10, 2014. Gachupin said the tribe declined any formal involvement in the matter and would not legally intervene because the children were neither members nor eligible for membership due to their insufficient blood quantum. The expert was unable to speak with Mother because he could not reach her at the numbers provided. In his opinion: "This is not an ICWA eligible case as the children are not members of . . . a Federally Recognized Tribe . . . ." However, the expert noted: "It does not appear that . . . the Cheyenne tribe was noticed for these hearing[s] per ICWA . . . ."

At a hearing on February 19, 2014, counsel for the department requested a "continuance due to the ICWA information we have learned regarding the [M]other, so we're asking for an inquiry of Mother regarding her complete Indian heritage." The social worker indicated the Cheyenne tribe had been noticed. Nevertheless, the court continued the matter to "complete ICWA notice to Cheyenne Tribe." (Capitalization omitted.)

The minors' whereabouts were still unknown. Mother had still not provided the social worker with an address at which Mother lived. The court ordered Mother to allow the social worker to accompany Mother home. At 10:56 a.m. that day, the social worker

7

called the court to inform it that minors had been found at Mother's residence and taken into protective custody.

On March 13, 2014, notices of child custody proceedings for an Indian child were filed which showed additional service on the Cheyenne-Arapaho Tribes of Oklahoma. The notices reflected that the minors' birth certificates were unavailable. On the same date, an ICWA declaration of due diligence was filed indicating: "Efforts to notice all involved Indian Tribes completed. No conf[i]rmation of membership received to date."

On March 18, 2014, the social worker informed the court she had spoken with someone at the Cheyenne-Arapaho Tribes who indicated she had not received the ICWA notice despite the social worker's receipt of a certified return receipt. The representative of the Cheyenne-Arapaho Tribes indicated the address to which the social worker mailed the notice was correct, but that it sometimes took longer than another address to be routed to her from that address. The representative said without the notice she could not provide any information on the minors' eligibility for membership.

On March 18, 2014, the court took jurisdiction over minors, ordered them removed from Mother's custody, and ordered reunification services for Mother. On May 12, 2014, a final ICWA declaration of due diligence was filed reflecting that "[t]he Department has received a response from the Cheyenne-Arapaho, and Northern Cheyenne indicating the [minors] do[] not qualify for membership."

An attached letter from the Northern Cheyenne Human Services Department reflected: "The child(ren) are not enrolled or eligible for enrollment into the Northern

8

Cheyenne Tribe and do not fall under [ICWA]." A notice from the Cheyenne & Arapaho Tribes enrollment department reflected they were "not able to locate any tribal member's with the names and date of birth's provided." The court signed a finding and order indicating: "Notice has been conducted as required by [ICWA]. The required 65 day period of time since noticing was received . . . has passed with no affirmative response of tribal membership received." ICWA does not apply.

In a status review report filed September 10, 2014, the social worker noted Mother had failed to complete counseling services, substance abuse aftercare, missed 11 random drug tests, and tested positive for drugs once. She missed several visits with minors and failed to communicate with the social worker. Minors became emotional when Mother failed to make scheduled visits. Mother had completed seven sessions of parenting class, completed a substance abuse program, and tested negative for drugs thrice. On September 18, 2014, the juvenile court continued Mother's reunification services.

In a status review report filed December 1, 2014, the social worker recommended the court terminate Mother's reunification services. Mother had, since the last report, failed to enroll in counseling, failed to show for five drug tests, and only attended two aftercare drug sessions. Mother had missed all visitation with minors since July 2014, except one on November 12, 2014. On August 12, 2014, Mother was arrested for being under the influence of a controlled substance (Health & Saf. Code, § 11550) and possession of drug paraphernalia (Health & Saf. Code, § 11364).

On December 22, 2014, the court terminated Mother's reunification services and set the Welfare and Institutions Code section 366.26[4] hearing. On May 5, 2015, the court held the section 366.26 hearing. Mother presented a letter indicating she was now enrolled in services and requested reinstatement of reunification services.[5] Mother had not visited minors since December 8, 2014. The court terminated Mother's parental rights.

## II. DISCUSSION

Mother contends neither the court nor the department satisfied its mandatory duty to investigate Mother's ancestry and provide all available information to the tribes. She complains about the paucity of Mother's familial information contained in the ICWA notices. Mother asserts the department had a continual duty to inquire of her whether she had more information at every encounter they had with her both before and after the notices had been sent.

The department argues Mother forfeited any ICWA issues by not raising them below and not raising the issue in an appeal from the dispositional order or a petition for extraordinary writ from the order terminating her reunification services. The department further contends Mother should be barred from raising the ICWA issue under the

---

[4] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[5] Mother had not filed a section 388 petition. The letter Mother presented is not in the record on appeal.

10

disentitlement doctrine because she failed to obey the court's orders.**6** On the merits, the department claims that ICWA did not apply because the minors were not eligible for membership in any tribe and that any error in noticing was harmless.

We hold Mother did not forfeit the issue on appeal. However, there is no indication on this record that the department did not convey every bit of information it was able to obtain from Mother to the tribes. In any event, the department is correct that ICWA did not apply because minors were not eligible for membership in any tribe. Thus, any error in noticing was harmless.

A. *Forfeiture*

Although issues regarding adequate ICWA notification may be raised for the first time on appeal, a party may be deemed to have forfeited the issue if it is raised in a second appeal in the same case and the party could have, but failed to, assign any error in the first appeal. (*In re Z.W.* (2011) 194 Cal.App.4th 54, 67 (*Z.W.*) ["If the Department gets a 'free pass' in a second appeal concerning ICWA notice defects, it is only because the parent fails to register an objection. . . . [¶] . . . [¶] A line has to be drawn. At some point, there must be finality to the ICWA noticing process."].) In *Z.W.*, the mother had filed a previous appeal in which she raised ICWA notice issues. The appellate court reversed and remanded for proper notice. On remand, the mother failed to object to any errors in the renewed notices. However, on appeal, she raised objections to the adequacy

---

**6** We elect to disregard the department's disentitlement argument and proceed to the merits after addressing the department's forfeiture argument.

11

of the renewed notices.  (*Id*. at p. 64.)  In the instant case, Mother did not file either an appeal from the dispositional order or a petition for extraordinary writ from the order terminating her reunification services.  Thus, *Z.W.* is factually distinguishable from this case because this is the first objection Mother has made to the adequacy of the ICWA notices.

Nevertheless, the department cites *In re Pedro N*. (1995) 35 Cal.App.4th 183, 189-191, for the proposition that where a parent fails to raise the issue of validity of the ICWA notice by filing an appeal from the dispositional order, the parent has forfeited the issue in an appeal from the order terminating her parental rights.  Although *Pedro N*. does indeed stand for this proposition, we note it stands alone.  It has been disagreed with by *In re Marinna J.* (2001) 90 Cal.App.4th 731, 739, *Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 260, and *In re B.R.* (2009) 176 Cal.App.4th 773, 779, for this very proposition.  (See also *Nicole K. v. Superior Court* (2007) 146 Cal.App.4th 779, 783, fn. 1 ["Although petitioner raises the adequacy of ICWA notice for the first time in this writ proceeding, the issue is not deemed forfeited because the principal purpose of ICWA is to 'protect and preserve Indian tribes.'"].)  We hold Mother did not forfeit the ICWA issue by failing to object below or by failing to file an appeal or petition from a previous order in which she could have raised the issue.

B. *Adequacy of the ICWA Notice*

Mother contends insufficient evidence supports both the court's determination the ICWA notices were adequate and that the minors were not Indian children for purposes of ICWA. We disagree.

"ICWA requires that when a court knows or has reason to know that an Indian child is involved in a dependency matter, it must ensure that notice is given to the relevant tribe or tribes. [Citation.]" (*In re J.O*. (2009) 178 Cal.App.4th 139, 154.) ICWA defines an "Indian child" as an "unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C § 1903(4).) However, "[t]he juvenile court '"needs only a suggestion of Indian ancestry to trigger the notice requirement."' [Citation.]" (*In re J.M.* (2012) 206 Cal.App.4th 375, 380.) "We review the trial court's findings whether proper notice was given under ICWA and whether ICWA applies to the proceedings for substantial evidence. [Citation.] Deficiencies in ICWA inquiry and notice may be deemed harmless error when, even if proper notice had been given, the child would not have been found to be an Indian child. [Citations.]" (*In re D.N.* (2013) 218 Cal.App.4th 1246, 1251.)

"The object of tribal notice is to enable a review of tribal records to ascertain a child's status under ICWA. [Citation.] The notices 'must contain enough information to be meaningful. [Citation.] The notice must include: *if known*, (1) the Indian child's name, birthplace, and birth date; (2) the name of the tribe in which the Indian child is

enrolled or may be eligible for enrollment; (3) names and addresses of the child's parents, grandparents, great grandparents, and other identifying information; and (4) a copy of the dependency petition.' [Citation.] 'It is essential to provide the Indian tribe with all available information about the child's ancestors, especially the ones with the alleged Indian heritage. [Citation.] Notice . . . must include available information about the maternal and paternal grandparents and great-grandparents, including maiden, married and former names or aliases; birthdates; place of birth and death; current and former addresses; tribal enrollment numbers; and other identifying data.' [Citations.]" (*In re K.M.* (2009) 172 Cal.App.4th 115, 119 italics added [department not required to do more where its requests of family for further ICWA relevant information are unsuccessful due to family's hostility].)

Although the ICWA notices left much of the desired information labeled unknown or unavailable, there is nothing in this record to attribute the lack of such information to the failure of the social worker to make adequate inquiry of Mother. Indeed, early on, Mother made herself unavailable to the social worker for the ICWA interview. The department requested additional time to obtain the requisite information from Mother in order to provide adequate ICWA notice. The court granted the request, ordering Mother to participate in an ICWA interview. The department requested additional continuances for the express purpose of obtaining additional information from Mother. The ICWA notice presumably contained what little information the department was able to obtain from Mother both during and after the ICWA interview. Mother concedes she had

14

contact with the department relevant to ICWA notice information in that she provided the department with her certificate of degree of Indian blood and "the maternal grandparents' names when interviewed for the ICWA information."

The department's efforts to obtain additional ICWA relevant information, if known by Mother, were futile largely because Mother failed to provide the department with contact information or contact the department herself. Mother was largely unavailable during the remainder of the proceedings, except during a few visits with the minors, a few telephone calls with the social worker, and court hearings. Mother apparently failed to provide the social worker with copies of minors' birth certificates, though ordered by the court to do so.

Mother contends the social worker should have effectually asked Mother during subsequent contacts the same questions the social worker asked Mother at the ICWA interview on the supposition that she may have had more information at those times than she had earlier. However, "ICWA does not require further inquiry based on mere supposition." (*In re K.M.*, *supra*, 172 Cal.App.4th at p. 119.)

Nevertheless, even after the initial ICWA interview, the department requested a "continuance due to the ICWA information we have learned regarding the [M]other, so we're asking for an inquiry of Mother regarding her complete Indian heritage." Apparently, the department learned nothing further from any such inquiries because the subsequent notice contained no further information. (*In re K.M.*, *supra*, 172 Cal.App.4th at p. 119.) Thus, the ICWA notice was adequate.

Moreover, any error was harmless because minors were not Indian children for purposes of ICWA because they were neither members of any federally recognized tribe nor eligible for membership in such a tribe. (25 U.S.C § 1903(4).) The social worker for the Pueblo Jemez stated that minors "are not registered members and could not be registered because of their blood quantum." Membership in the tribe required a minimum blood quantum of one-fourth Pueblo Jemez, whereas the minors had only a one-eighth blood quantum.

Mother repeatedly misrepresents the record indicating the minors would be eligible for naturalized *membership*;[7] however, the tribe never indicated the minors would be eligible for *membership*, only that they *could be* eligible for *naturalization*, but only if [*M*]*other reenrolled* and *provided the minors' birth certificates*. This she apparently never did.

---

[7] The department's misinterpretation of the tribe's actual response is not authority for the proposition that the tribe actually represented minors would be eligible for *membership*. Only the tribe's actual response could provide such authority. That notice indicates only that minors *could be naturalized* if Mother applied, and presumably was granted, reenrollment status and further provided minors' birth certificates. Indeed, the tribe indicated J.O. could be eligible for naturalized *membership* if Mother reapplied and provided his birth certificate because his name appeared in the "Jemez census book." Presumably, therefore, the minors' names did not appear in the census book and they would therefore not be eligible for naturalized *membership* even if Mother became reenrolled and had provided their birth certificates. Indeed, this distinction is supported by the social worker's subsequent report that in speaking with a representative of the tribe, the social worker had been informed minors could not be registered members of the tribe because of their blood quantum. This was reiterated by the department-hired ICWA expert.

16

Mother complains the court never made an oral, in-court declaration that ICWA did not apply and notice of the order was not provided to Mother's counsel. If Mother had been noticed, Mother asserts she *may* have been able to provide additional ICWA relevant information. (*In re K.M.*, *supra*, 172 Cal.App.4th at p. 119 ["ICWA does not require further inquiry based on mere supposition."].) However, additional names, addresses, and dates for Mother's lineage would not have made the minors eligible for membership in any tribe because they lacked the requisite blood quantum.

Mother also complains that although the tribe indicated it would not intervene, it requested to be kept abreast of the proceedings but never was. However, Mother cites no authority for the proposition that a nonintervening tribe has a right to be notified of the status of confidential proceedings. Here, substantial evidence supports the court's orders finding that ICWA notice was adequate and the minors were not Indian children for purposes of ICWA. Any error in the ICWA notices was also harmless. (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1530.)

17

## III. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

HOLLENHORST _____

              Acting P. J.

McKINSTER _____

             J.