Filed 12/23/21  In re A.H. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re A.H. et al., Persons Coming Under the Juvenile Court Law. | B308153, B309301, B311216 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>C.P. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. DK24185A, DK24185B, DK24185C, DK24185D, DK24185E) |

APPEALS from orders of the Superior Court of Los Angeles County, Stephen C. Marpet, Judge Pro Tempore.  Conditionally reversed with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant C.P.

Carol A. Koenig, under appointment by the Court of Appeal, for Defendant and Appellant A.H.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

In this consolidated second proceeding in the dependency of their five children, C.P. (mother) and A.H. (father) contend the juvenile court erred in finding that the Department of Children and Family Services (DCFS) complied with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code,[1] § 224 et seq.) and that ICWA does not apply. In the first appeal, we conditionally reversed the order terminating parental rights to the two youngest children because DCFS violated its continuing duty of inquiry. (*In re A.H.* (Sept. 17, 2020, B302022) [nonpub. opn.] as modified Oct. 16, 2020 (the prior appeal).) Meanwhile, the juvenile court terminated parental rights to the older three children and the parents filed the instant appeal (B308153). After our remand of the prior appeal, the court found it had no reason to know the children were Indian children and terminated parental rights to all five of the children. The parents appealed again (B308153 & B309301). We conclude that DCFS failed to demonstrate it complied with its duty of further inquiry. Accordingly, we conditionally reverse the orders terminating parental rights to all five children and remand to the juvenile court for the limited

---

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

purpose of directing DCFS to comply with its federal and state duties under ICWA.

## BACKGROUND

I.      Procedural background and the prior appeal

We rely on the prior appeal, *In re A.H.*, *supra*, B302022 for part of the factual background.[2]  As the result of the family's extensive child welfare history, DCFS filed a petition under section 300, subdivision (b)(1) on behalf of Am.H. (age 10), Al.H. (age 8), Ad.H. (age 7), Ai.H. (age 5), and An.H. (age 4), alleging that mother and father's substance abuse rendered them unable to care for or to protect the children.

For the detention hearing in 2017, father filed a parental notification of Indian status form in which he checked the box indicating that he may have Indian ancestry and wrote, "Cherokee–MGM."  He added paternal grandmother's name and telephone number, and paternal great-grandmother's name.  At the hearing, paternal grandmother told the juvenile court that she had Cherokee ancestry but was not a registered member of the tribe.  She also mentioned the Navajo Nation.  She stated that paternal great-great-grandmother (the children's second great grandmother) and their third great grandmother, who are deceased, were "full Indian" and registered with the tribe, but did not live on the reservation.  She stated that paternal great grandmother was born on July 17, but she did not know the year

[2] On our own motion, we take judicial notice of our prior unpublished opinion in *In re A.H.*, *supra*, B302022.  (Evid. Code, § 452, subd. (d); Cal. Rules of Court, rule 8.1115(b)(1) [we may cite from unpublished cases under the doctrine of law of the case].)

3

or place of birth. She thought someone in the family was born in Louisiana, but then admitted she did not know. She was certain that she and father could register for tribal membership. Paternal grandmother explained there was no other family member alive who had more information, but offered to call paternal great aunt. The court stated, at "this time, the court is going to find that it's not an ICWA case as I have *no reason to know*. [DCFS] can follow up with additional information."

The juvenile court sustained the petition, declared the children dependents and removed them from the parents' custody. The parents did not comply with their case plans and so the court terminated reunification services.

On November 1, 2019, the juvenile court terminated parental rights to the two youngest children, implicitly ruling that ICWA did not apply. The court continued the section 366.26 hearing for the older three children's adoption assessments. The parents filed the prior appeal from the order terminating parental rights to the youngest two children.

On October 13, 2020, while the prior appeal was pending, the juvenile court terminated parental rights to the older three children and relieved counsel for the parents. The court ordered DCFS to file an ICWA-related progress report in November 2020, and an adoption assessment for the older three children in April 2021. The parents filed their notices initiating this appeal in case Nos. B308153 and B309301.

II.    ICWA inquiry activity while the prior appeal was pending

DCFS filed a last minute information for the court listing the social worker's three inquiries on behalf of the younger two

4

children.[3]  In late September 2020, the social worker contacted the paternal grandmother who stated that the only other relative who might have had information died in April 2020 and there was "no one else to contact for any information."  DCFS also sent certified mail to "the ICWA tribes" in late September 2020.  On October 5, 2020, the social worker left telephone messages with the Navajo Nation, the Navajo Region, the Bureau of Indian Affairs (BIA), the Cherokee Nation, and the Secretary of the Interior.  DCFS did not submit copies of the certified mail, and there is nothing in the record indicating what information DCFS imparted in its telephone messages.

On October 8, 2020, DCFS received a letter from the Navajo Nation stating that the juvenile court "must:  treat the child as an Indian child, unless and until it is determined on the record that the child does not meet the definition of 'Indian Child.' "

DCFS mailed notices about the older three children to the Navajo Nation and Cherokee Nation on November 2, 2020, and subsequently received signed return receipts.  DCFS did not file copies of those notices.

---

[3] We granted DCFS's October 7, 2021 motion to augment the record with the October 13, 2020 last minute information for the court.  We also granted DCFS's March 12, 2021 request to take judicial notice of postjudgment evidence showing DCFS's inquiry efforts and the juvenile court's January 21, 2021 minute order.  We may take judicial notice of postjudgment records in exceptional circumstances, such as these, to assess whether ICWA noncompliance resulted in prejudice to any affected tribe. (*In re Z.N.* (2009) 181 Cal.App.4th 282, 298–299.)

On November 9, 2020, the social worker called the Navajo Nation and spoke to staff member Jackie who stated that for the two younger children, there were no records for the family and ICWA did not apply. The record does not indicate what information DCFS imparted to the Navajo Nation.

The social worker also contacted the Cherokee Nation on November 9, 2020. "Tracy" stated that because of Covid-19, the Cherokee Nation needed more time to follow up on all inquiries.

On November 18, 2020, DCFS received a letter from the Bureau of Indian Affairs indicating that the notices DCFS mailed to it and to the tribes were proper and that each tribe would be responsible for determining who they enroll.

Our remittitur for the prior appeal issued on December 18, 2020. We held that DCFS failed to follow up with the paternal grandmother or great aunt. We conditionally reversed the order terminating parental rights to the two younger children and directed the juvenile court to order DCFS to comply with ICWA's requirements for further inquiry (§ 224.2) and subsequent formal notice if Indian heritage were indicated (§ 224.3).

III. Further ICWA inquiry after remand

On December 29 and 30, 2020, DCFS called the Navajo Nation and the Cherokee Nation and left messages "with the name of each child for an update." The record does not indicate that the messages also included the names of any of the children's ancestors who were registered tribal members.

On January 4, 2021, Traci Willie from the Cherokee "tribes" repeated by email her earlier oral statement that the tribe was short staffed because of Covid-19 and was still responding to notices from June 2020. Later that day, Ms. Willie emailed DCFS that, among other things, "Neither parent nor

child[ren] are registered as Cherokee Nation tribal members.  [¶] The children are not 'Indian children' in relation to the Cherokee Nation as defined in the Federal ICWA.  Cherokee Nation will not be involved *based on the information exactly as provided*." (Italics added.)  The social worker replied hours later by listing the names and birthdates of the children and parents.

IV.    The order triggering the instant appeal

On January 6, 2021, the juvenile court reappointed counsel for the parents as to the youngest two children to comply with our remittitur and announced that the "[n]ext hearing date on this matter will be the review on *April 13th* and it can include all of the requests made by the appellate court to follow up on ICWA."  (Italics added.)

The interim review report for the hearing on January 21, 2021, identified as a "Special/Interim" hearing for DCFS to address ICWA status,  reflected that DCFS received signed receipts on November 6, 2021 for the notices it sent to the Navajo Nation and Cherokee Nation concerning the older three children. The email received from Traci Willie was included, but the notices themselves were not attached and so this report for the special hearing into ICWA does not indicate what information DCFS shared with the Navajo Nation and the Cherokee Nation.

The January 21, 2021 hearing—originally scheduled as a nonappearance progress report hearing—was held as a permanency planning hearing for all five children (§ 366.26). According to the minute orders, DCFS, deputy county counsel, and the children's attorney were present.  Neither parent nor mother's attorney was present, but father's counsel appeared by WebEx.  The juvenile court found that proper notice was given. Stating that the case was back for ICWA compliance, and that it

7

had read DCFS's various reports "reflecting that notice to these tribes were given," the juvenile court found this was not an ICWA case and that it had no reason to know the children were Indian children.  The court terminated parental rights and relieved the parents' attorneys.  The parents each appealed from that order.[4]

## DISCUSSION

I.   ICWA

    A.   *Standard of review*

" 'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings.' " (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.)  We review the court's ICWA factual findings for substantial evidence.  When the facts are undisputed, we independently assess whether the requirements of ICWA have been satisfied.  (*Ibid.*)  We apply the law as it existed at the time of the order appealed from, i.e., January 21, 2021.  (*Id.* at p. 321.)

    B.   *Analysis*

The parents contend that the juvenile court erred in finding ICWA did not apply to the children because DCFS has still failed to satisfy its duty of further inquiry.

ICWA defines an Indian child as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe

---

[4] We consolidated the parents' appeals from the October 13, 2020 order terminating parental rights to the eldest three children (B308153 & B309301) with the parents' appeals from the January 21, 2021 order finding ICWA does not apply to the children (B308153 & B311216).

8

*and* is the biological child of a member of an Indian tribe." (25 U.S.C.A. § 1903(4), italics added; § 224.1, subd. (a).) The definition turns " 'on the child's political affiliation with a federally recognized Indian Tribe,' " not "necessarily" "the child's race, ancestry, or 'blood quantum.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882.) The tribe determines whether a child is an Indian child under ICWA. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 15.)

The juvenile court has a continuing duty under ICWA to inquire whether a dependent child is or may be an Indian child (§ 224.2, subd. (a); Cal. Rules of Court, rule 5.481(a)[5]), even as late as the section 366.26 hearing (*In re Isaiah W.*, *supra*, 1 Cal.5th at p. 11). This continuing, affirmative duty to inquire about Indian status consists of three distinct parts (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*)), of which only the first two are at issue in this appeal.[6]

The first is the duty of initial inquiry when a child is removed from the parents and placed in the custody of DCFS. (§ 224.2, subds. (b) & (c).) We noted in the prior appeal that the court satisfied that duty in 2017 and our prior opinion is law of

---

[5] All further rule references are to the California Rules of Court.

[6] The third duty, which we do not reach in this appeal, is to provide formal notice to the tribe and is triggered once the court or social worker "knows or has reason to know" an Indian child is involved in the dependency proceeding. When the court has reason to know, ICWA requires that DCFS give formal notice to the parent, legal guardian, or Indian custodian and to the child's tribe. (§ 224.3, subds. (a) & (f); rule 5.481(c)(1).)

the case as to all five children (*A.H. v. Superior Court* (2013) 219 Cal.App.4th 1379, 1386).

The second is the duty of "further inquiry regarding the possible Indian status of the child," which arises when "the court, social worker, or probation officer has *reason to believe* that an Indian child is involved in a proceeding." (§ 224.2, subd. (e), italics added.) We held in the prior appeal that the juvenile court and DCFS had "*reason to believe* that Indian children were involved," and this holding is likewise law of the case.

We remanded the case however, because DCFS failed to comply with ICWA's section 224.2 duty of further inquiry. Section 224.2, subdivision (e)(2) delineates steps the court and DCFS must take in their "further inquiry" when, as here, the juvenile court and DCFS have a reason to believe the children are Indian children. The steps include, but are not limited to, interviewing parents and extended family members to gather information about, inter alia, ancestors' names and aliases, dates and places of birth and death (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5)); and contacting the Bureau of Indian Affairs and the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility (§ 224.2, subd. (e)(2)(B)–(C); see rule 5.481(a)(4)). The statute specifies that *contact* with a tribe must include, at minimum, "telephone, facsimile, or electronic mail contact to each tribe's designated agent" and involves "sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination." (§ 224.2, subd. (e)(2)(C).)

We are satisfied that DCFS fulfilled its obligation to gather information from parents and extended family members as

discussed in our remand.  (§ 224.2, subd. (e)(2)(A).)  In the prior opinion, we said that DCFS was "obligated at a minimum to inquire about the information paternal grandmother obtained from great aunt, or to contact great aunt directly, and to inquire of any other extended members of father's family."  The social worker did follow up with paternal grandmother who stated that the only other relative who might have had information died in April 2020 and there was "no one else to contact for any information."  Although DCFS did not clarify that the person who died in April 2020 was the great aunt, it is clear no other family member can provide additional information about the family's background.

Nonetheless, DCFS failed to show it satisfied its further-inquiry duty with respect to contacting the tribes.  As part of this duty, DCFS is obligated *at a minimum* to contact the tribe or tribes and anyone else who might know about eligibility. (§ 224.2, subd. (e)(2)(C); *In re T.G.* (2020) 58 Cal.App.5th 275, 297.)  Father and paternal grandmother indicated Cherokee ancestry.  There are three federally recognized Cherokee tribes with three different agents for service of notice, namely the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians in Oklahoma.  (See 85 Fed.Reg. 5462, 5462–5467 (Jan. 30, 2020)[7].)  DCFS contacted only one, the Cherokee Nation.[8]  Yet, nothing in the record

---

[7] The BIA's published list of designated tribal agents and addresses for DCFS's 2019 and 2020 mailings is contained in 85 Fed.Reg. 24004-2 (April 30, 2020).

[8] We note that the Cherokee Nation's informal email response was not definitive.  The interpretation of a letter is a

11

establishes that the Cherokee Nation was the paternal family's tribe. If the tribe's identity cannot be determined, DCFS was required to contact the BIA and the State Department of Social Services for assistance in identifying names and contact information of the tribes (rule 5.481(a)(4)(B); § 224.2, subd. (e)(2)(B)). But the BIA's response to DCFS's notice is not in the record, and DCFS did not indicate that the BIA specified which of the three was the paternal family's tribe. DCFS's " 'inquiry obligation is "not an absolute duty to ascertain or refute Native American ancestry." ' " (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 405.) Here, however, DCFS never contacted two of the federally recognized Cherokee tribes.

Compounding the problem is DCFS's failure to disclose to the juvenile court what information it gave the tribes it did contact. Before the juvenile court can make a finding that ICWA does not apply, DCFS must make a "proper and adequate"

---

question of law in the absence of conflicting evidence. (*In re Z.N.*, *supra*, 181 Cal.App.4th at p. 299.) The determination by an Indian tribe that a child is not a member of, or eligible for membership in, that tribe is conclusive (§ 224.2, subd. (h)), but the Cherokee Nation's January 4, 2021 email response was provisional. Ms. Willie's email stated the Cherokee nation would not be involved in the case "*based on the information exactly as provided. . . . An official response letter has not been generated yet but will be once the received notice has been fully researched and processed.*" (Italics added.) The email also stated that the children were not registered members of the Cherokee Nation but did not indicate whether they were *eligible* for membership. In response to Ms. Willie's email, DCFS provided the names and birthdates of the children and parents, indicating that communication with this tribe was still ongoing on January 4, 2021. By its terms, the email was preliminary.

further inquiry under section 224.2. (§ 224.2, subd. (i)(2); *D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) Toward that end, rule 5.481(a)(5) mandates that the agency "*must* on an ongoing basis *include in its filings* a *detailed description of all inquiries*, *and further inquiries* it has undertaken." (Italics added.) To ascertain whether the requirements of ICWA have been satisfied and to make an informed ruling, the court must have sufficient facts, as established by DCFS, about not simply the results of its inquiry, but also the information it gave to the tribes to obtain those results; and not just the responses to notices, but also the content of the notices sent to any tribe. " 'Without these facts, the juvenile court is unable to find, explicitly or implicitly, whether the ICWA applies.' " (*In re Josiah T.*, *supra*, 71 Cal.App.5th at p. 408.)

The record here does not contain copies of any mailings DCFS sent, even the ones for which it filed return receipts, and DCFS did not describe for the juvenile court the content of its conversations, mailings, or notices given to the two tribes it did contact. As best we can discern, the only information DCFS gave the two tribes was the names and birthdates of the children and parents. There is no evidence that DCFS mentioned the paternal grandmother, or the paternal great-grandmother who was a registered member of her tribe. (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5).) The BIA found that the notices were proper, but the tribe decides what it needs to make its ICWA determination, and we have no indication that the information DCFS imparted was sufficient. (§ 224.2, subd. (e)(2)(C).) In any event, DCFS's failure to make a record of the substance of its inquiries deprived the juvenile court of the information it needed to determine whether

DCFS's further inquiry and due diligence was *proper and adequate*, and whether ICWA applied.

Normally, the appellant has the burden to show prejudicial ICWA error on appeal based on an adequate record. (*In re Austin J.*, *supra*, 47 Cal.App.5th at p. 885.) In a case such as this however, where the record does not show that all relevant tribes were contacted or that the contact DCFS made included all known identifying information, the burden of making an adequate record demonstrating DCFS's efforts to comply with ICWA's further inquiry and requirements falls on the agency. (*In re N.G.* (2018) 27 Cal.App.5th 474, 484.) Absent an appellate record affirmatively showing such efforts, we will not infer that substantial evidence supports the court's finding that proper and adequate ICWA notices were given or that ICWA did not apply; rather we will conclude that there is prejudicial and reversible ICWA error. (*Ibid.*) DCFS presumably included everything that was in the record related to ICWA in its request for judicial notice. That evidence is insufficient to support the juvenile court's ICWA findings.

To avoid any further delay, on remand, DCFS shall, with all due haste, contact the Navajo Nation and all of the federally recognized Cherokee tribes, unless it demonstrates that the Cherokee Nation is the family's tribe. Additionally on remand, DCFS shall file with the juvenile court copies of all mailings, faxes, and notices it sends, and document the full substance of the information it conveys, along with the tribes' responses and return receipts so that the court can evaluate whether DCFS's further inquiry was proper and adequate (§ 224.2, subd. (i)(2); *D.S.*, *supra*, 46 Cal.App.5th at p. 1050) and determine whether ICWA applies (*In re A.M.*, *supra*, 47 Cal.App.5th at p. 314).

14

II.    Notice and jurisdiction

The parents contend that there is no evidence to support the trial court's finding that mother and her trial attorney were notified of the January 21, 2021 hearing.  They add that although on January 6, 2021 counsel were reappointed for the younger two children because of our remand, there is no evidence that counsel was reappointed for the parents in the older three children's case after the court relieved trial counsel at the October 13, 2020 hearing.  Parents are entitled to notice of and representation by counsel in a post-remand ICWA compliance hearing, irrespective of whether our dispositional language specifically directed the juvenile court to include the parents in the hearing.  (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1432, 1435–1436; accord *In re Z.W.* (2011) 194 Cal.App.4th 54, 63–64.)  On remand, the juvenile court must appoint counsel for the parents with respect to all five children and provide notice to the parents and their attorneys of any new ICWA hearing.

The parents also contend that the juvenile court lacked jurisdiction to rule on the ICWA issue in January 2021.  The juvenile court lacks jurisdiction to rule on, modify, or revoke an order terminating parental rights once it has become final.  (*In re K.M.* (2015) 242 Cal.App.4th 450, 457.)  Section 366.26, subdivision (i)(1) mandates that "[a]ny order of the court permanently terminating parental rights under this section shall be conclusive and binding . . . .  After making the order, the juvenile court shall have no power to set aside, change, or modify it, . . . but nothing in this section shall be construed to limit the right to appeal the order."  Although DCFS may continue to pursue its further inquiry and notice duties, where the juvenile court lacks jurisdiction to rule on any dispute collateral to a final

15

termination order, it acts in excess of its jurisdiction in ruling that ICWA does not apply while the termination order is being reviewed on appeal. (*In re K.M.*, at pp. 457, 459.)

Here, the juvenile court had jurisdiction to consider the ICWA issue with respect to the younger two children because our remittitur in the prior appeal issued in December 2020 restored jurisdiction to the juvenile court to consider this exact issue in January 2021. However, the court lacked jurisdiction in January to rule on the collateral matter of ICWA application to the older three children because the October 2020 termination order as to them was already on appeal. Nonetheless, we are reversing the ICWA finding as to all five children because of DCFS's failure to comply with its further-inquiry duties, and so the result is the same here, irrespective of whether the juvenile court acted in excess of jurisdiction in ruling on ICWA as to the older three children.

## DISPOSITION

The orders of October 13, 2020 and January 21, 2021 terminating parental rights are reversed and the matter is remanded to the juvenile court with directions to appoint counsel for the parents and to order DCFS to demonstrate within 20 court days of the appointment of counsel that it has contacted all of the federally recognized Cherokee tribes and the Navajo Nation and provided them with all of the information it has obtained about the children's potential Indian ancestry consistent with the law and with this decision for further inquiry. The juvenile court shall then determine whether this new inquiry is proper and adequate. If as a result of a proper and adequate further inquiry, new information is obtained that may assist the tribe or tribes in determining whether the children are Indian

16

children, the juvenile court shall order DCFS to provide any appropriate tribe or tribes with proper formal notice. If, after proper inquiry and notice, the tribe or tribes do not respond or respond that the children are not Indian children within the meaning of ICWA, then the juvenile court shall reinstate the orders terminating parental rights to all five children. In all other respects, the orders terminating parental rights are affirmed.

NOT TO BE PUBLISHED.


VIRAMONTES, J.[*]


We concur:


EDMON, P. J.


LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.