Filed 1/25/24  In re K.F. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re K.F., a Person Coming Under the Juvenile Court Law. | C098527 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.T.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2021-0000073) |

J.T., mother of the minor (mother), appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  She contends the juvenile court erred in failing to find the beneficial parental relationship exception to adoption applied and that we must remand for further

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

compliance with the Indian Child Welfare Act of 1978 (ICWA). (25 U.S.C. § 1901 et seq.; § 224.2.)

We will conditionally affirm subject to full compliance with the ICWA on remand, as described in this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On February 24, 2021, the San Joaquin County Human Services Agency (the Agency) filed a section 300 petition on behalf of the newborn minor K.F., who was still in the hospital after being born prematurely and experiencing feeding issues. The minor was born in January 2021. The petition alleged mother's developmental delays and mental health issues affected her ability to properly care for and supervise the minor, and the possible biological father, M.F. was not cooperative with the Agency's investigation and was unable to demonstrate a plan to address the minor's safety if placed in his care.[2] Mother's two older children were dependents of the court due to mother's inability to properly care for them. A social worker made an unannounced visit to mother's home two and a half weeks after the minor's birth. The minor's nurse reported that mother was not visiting and bonding with the minor. However, the minor's hospital social worker reported mother had visited when she was able to feed the newborn. The juvenile court appointed a guardian ad litem for mother and ordered the minor detained with supervised visitation for mother.

The parents submitted on jurisdiction on April 13, 2021, but the juvenile court did not hold the contested disposition hearing until March 23, 2022. The Agency recommended the parents be bypassed for reunification services. Mother was to be bypassed under section 361.5, subdivision (b)(2), due to her mental disability. The recommendation was supported by two psychological evaluations that concluded mother

---

[2] The father is not a party to this appeal.

2

was not likely to be capable of caring for the minor with 12 months of services. The biological father was to be bypassed under section 361.5, subdivision (a), based on the finding that such services would not benefit the minor. The juvenile court followed the Agency's recommendations, bypassed the parents for reunification services, and set the section 366.26 hearing.

Mother began her twice weekly supervised visits on April 6, 2021. She visited regularly, and visits were appropriate. The minor was placed in the same foster home as his half siblings on August 12, 2021. He was reported to be doing well and emotionally bonded to his foster parents and half siblings. The foster parents were committed to providing permanency through adoption and had been approved for adoption. An adoption assessment concluded the minor was adoptable. Noting the minor's tender age and need for a suitable and stable environment, the Agency recommended termination of parental rights.

The section 366.26 hearing took place on April 25, 2023. The minor was then over two years old. The social worker testified that mother visited regularly for an hour, once a week. Her visits were supervised. The minor often cried at the beginning of visits when the foster mother would leave. The minor referred to the foster parents as "mom" and "dad" but, to the social worker's knowledge, did not refer to mother as "mom." Mother testified she believed the minor recognized her as his mother because he was always looking at her and smiling. She felt she had a bond with the minor because she holds him, talks to him, and loves him and, in return, he smiles and hugs her back. She testified she believes it is in the minor's best interest to continue visits because he is her son.

The juvenile court noted mother had provided very little evidence with regard to the extent of the minor's bond with her and found mother did not meet her burden to show any of the exceptions to adoption applied. The juvenile court found the minor was likely to be adopted and terminated parental rights.

3

Mother appealed. This matter was fully briefed on December 4, 2023.

Additional facts related to the ICWA issue are contained in our discussion *post*.

## DISCUSSION

### I

### *Beneficial Parental Relationship Exception to Adoption*

Mother contends the juvenile court erred by failing to find the beneficial parental relationship exception to adoption applied. She claims she established the minor would benefit from continuing their relationship and, therefore, the juvenile court should have selected guardianship as the minor's permanent plan. We find no error.

At the section 366.26 selection and implementation hearing, a juvenile court must choose one of the several " 'possible alternative permanent plans for a minor child. . . . *The permanent plan preferred by the Legislature is adoption*. [Citation.]' [Citation.] If the court finds the child is adoptable, it *must* terminate parental rights absent circumstances under which it would be detrimental to the child." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368.) There are only limited circumstances that permit the court to find a "compelling reason for determining that termination [of parental rights] would be detrimental to the child." (§ 366.26, subd. (c)(1)(B).) One such circumstance is the so-called beneficial parental relationship exception. (§ 366.26, subd. (c)(1)(B)(i) [beneficial parental relationship exception]; *In re Caden C.* (2021) 11 Cal.5th 614, 629 (*Caden C.*).)

The party claiming the exception has the burden of establishing the existence of any circumstances that constitute an exception to the termination of parental rights. (*Caden C., supra*, 11 Cal.5th at pp. 636-637; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252; Cal. Rules of Court, rule 5.725(d)(2).) The parent "must show regular visitation and contact with the child, taking into account the extent of visitation permitted. Moreover, the parent must show that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit

4

from continuing the relationship. And the parent must show that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, at p. 636.)

The beneficial parental relationship exception to adoption "must be examined on a case-by-case basis, taking into account the many variables which affect a parent/child bond. The age of the child, the portion of the child's life spent in the parent's custody, the 'positive' or 'negative' effect of interaction between parent and child, and the child's particular needs are some of the variables which logically affect a parent/child bond." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.) The factual predicates of the exception must be supported by substantial evidence, but the juvenile court exercises its discretion in weighing that evidence and determining detriment. (*Caden C., supra*, 11 Cal.5th at pp. 639-640.) We do not substitute our judgment for that of the juvenile court as to what is in the child's best interests. (*Id*. at pp. 640-641.)

Here, the fact that mother maintained consistent visitation with the minor was undisputed. Mother focuses her argument on her contention that she established the minor would benefit from continuing their relationship because she was a consistent person in his life, her visits with the minor were appropriate, and her love and affection was reciprocated by the minor. However, it is not enough for a parent to show frequent and loving contact during pleasant visits. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555.) It is not enough to show, as testified to by mother, that the minor smiles when hugged or hugs mother in return. And it is not enough to claim continuing the relationship or visits is important, as testified to by mother, because the minor "is her son." (*In re Autumn H., supra*, 27 Cal.App.4th at p. 575 [interaction between natural parent and child will almost always confer some incidental benefit to the child].) A parent must establish that a minor has such a significant, positive emotional attachment to the parent that the benefit of maintaining it outweighed the benefits a minor would obtain from adoption. (*Ibid*.; *Caden C., supra*, 11 Cal.5th at pp. 633-634.) Mother did not meet her burden.

5

Even assuming mother had established her relationship with the minor was sufficiently significant and positive and that continued contact would benefit the minor, she failed to meet her burden to establish a detriment in terminating parental rights or that the detriment of termination outweighed the benefits of adoption. Mother identified little evidence, if any, that termination of the parental relationship would be detrimental to the minor at all, let alone when balanced against the countervailing benefit of a new, adoptive home. (Cf. *Caden C., supra*, 11 Cal.5th at pp. 627-628, 636 [relying on a bonding study concluding severing the parental relationship would be detrimental to the child].) The minor was removed from mother as a newborn. At age two, he has spent the entirety of his life living with and being cared for by foster caretakers and has been placed with his current foster caregivers, who also care for the minor's half siblings, since August 2021 and whom he refers to as "mom" and "dad." By all accounts, he is thriving in their care and has bonded with his caretakers and half siblings. He often cried at the beginning of visits when separating from the foster mother but showed no distress at separating from mother at the end of visits. Even if the minor generally enjoyed most of the visitation time, there was insufficient evidence that the minor would suffer detriment from termination of parental rights or that the detriment of termination outweighed the benefits of adoption. The juvenile court did not err in determining the beneficial parental relationship exception to adoption does not apply.

Finally, to the extent mother claims the juvenile court failed to state, on the record, its reasonings and findings in denying application of the beneficial parental relationship exception, the court is not required to make those findings on the record. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156, 1161 [no requirement that juvenile court make specific findings when it finds beneficial parental relationship exception does not apply].)

6

## II

### *The ICWA Compliance*

Mother contends we must remand for further ICWA compliance because the Agency did not establish that it interviewed available relatives in gathering familial information about the minor's possible Indian ancestry. She also assigns error to the juvenile court's failure to make a finding on the applicability of the ICWA. We agree that remand is necessary.

As this court recently explained: " 'The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency proceedings. [Citations.] A major purpose of the ICWA is to protect "Indian children who are members of or are eligible for membership in an Indian tribe." [Citation.]' (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.) The ICWA defines an ' "Indian child" ' as a child who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4).) The juvenile court and the social services department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)" (*In re G.A.* (2022) 81 Cal.App.5th 355, 360, review granted Oct. 12, 2022, S276056.)

"[S]ection 224.2 creates three distinct duties regarding [the] ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his [or her] family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a

7

reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply. (See § 224.2, subd. (c) [court is obligated to inquire at the first appearance whether anyone 'knows or has reason to know that the child is an Indian child']; *id*., subd. (d) [defining circumstances that establish a 'reason to know' a child is an Indian child]; § 224.3 [ICWA notice is required if there is a 'reason to know' a child is an Indian child as defined under § 224.2, subd. (d)].)" (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

Here, the father reported he did not have any Native American ancestry. Mother reported possible Cherokee ancestry and the Agency sent notice to the three Cherokee tribes. The notice included identifying information for the maternal and paternal families (including the minor's maternal grandparents, maternal great-grandparents, paternal grandparents and paternal great-grandmother). None of the tribes expressed the need for additional information or that the minor was eligible for membership.

The record does not include documentation indicating the origin of the ancestral information, or which family members were questioned, in putting together the ICWA notice to the tribes. Mother now contends that the Agency's failure to provide such documentation has resulted in a failure to establish compliance with the ICWA. She argues both parents had good relationships with their extended family, yet the Agency did not report or establish it made inquiry of these relatives. And she assigns error to the juvenile court's failure to make findings about the adequacy of the Agency's efforts or whether the ICWA applies to the proceedings.

Mother raised a similar concern in her writ petition, filed in this court on May 4, 2022.**3** In her petition, she complained the Agency had failed to comply with the ICWA

---

**3** On our own motion, we take judicial notice of mother's writ petition filed on May 4, 2022, and the Agency's response filed on May 19, 2022, contained in this court's file in *J.T. v. Superior Court* (C095963, petn. den. by order June 8, 2022) (case

inquiry requirements because it had access to several of the father's relatives and had not inquired of them whether the minor had Indian ancestry. She did not, however, raise any concerns about the Agency's inquiry or notice with respect to *her* ancestry, or the lack of documentation, although the bases for all the alleged ICWA deficiencies she raises now were contained in the record at that time.

Yet, despite being aware of at least some of the alleged deficiencies in ICWA compliance (and, at least arguably, constructively aware of the remaining alleged deficiencies), mother did not, over the course of the following nine months, ask the juvenile court to order the Agency to make further inquiries or provide further documentation or evidence. While the juvenile court and the Agency are charged with making the appropriate inquiry under the ICWA, it is equally the obligation of the parents' and minors' counsel to promptly bring such matters to the attention of the juvenile court. Counsel must not remain idle, aware of alleged deficiencies in ICWA inquiry and notice, and then complain about omissions in ICWA inquiry or notice on appeal.

The parties agree that the juvenile court made no express findings as to whether the ICWA applied in this case. The juvenile court's failure to make such findings is troubling. The juvenile court, the Agency, and counsel involved in this case were all aware that the juvenile court had yet to make final findings on the applicability of the

No. C095963). (Evid. Code, §§ 452, 459.) We note that a reviewing court may give the parties to an appeal an opportunity to comment on the propriety of judicial notice taken on the reviewing court's own motion, if the matter is of substantial consequence to the appellate opinion. (Evid. Code, §§ 452, subd. (d) [judicial notice of court records], 459, subd. (c) [reviewing court may take judicial notice but must give parties the opportunity to comment under Evid. Code, § 455 if the matter is of substantial consequence].) The validity of taking judicial notice of the matters in case No. C095963 is clear. However, if the parties are aggrieved by this judicial notice, we will entertain a motion for rehearing to give them an opportunity to address the matter before the decision becomes final. (Evid. Code, § 459, subd. (d).)

9

ICWA because this fact was noted in the Agency's response to mother's writ petition, *and* in our order denying the petition, in which we expressly found that the ICWA claim was premature, "because it does not appear the juvenile court made an ICWA ruling at or before the challenged dispositional hearing as to whether ICWA applied to the proceedings." We further included in our order the remark that we "encourage[d] the juvenile court and the child welfare agency to ensure full compliance with all applicable ICWA statutes as early in the remainder of the proceedings as possible." Nonetheless, the juvenile court did not make, nor did counsel request it make, final ICWA findings.

" 'The notice requirements serve the interests of the Indian tribes "irrespective of the position of the parents" and cannot be [forfeit]ed by the parent.' " (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435; but see *In re X.V.* (2005) 132 Cal.App.4th 794, 798 ["The purposes of the ICWA are indeed commendable, but we do not believe Congress envisioned or intended *successive* or *serial* appeals on ICWA notice issues when, given a proper objection, they could easily be resolved during proceedings on remand for the specific purpose of determining whether proper notice was given"]; *In re Z.W.* (2011) 194 Cal.App.4th 54, 63-68 ["A line has to be drawn. At some point, there must be finality to the ICWA noticing process. Balancing the minor's interest in permanency and stability against the tribes' rights under the ICWA, we draw the line in this case"].)[4] But " '[c]ounsel should not forget that they are officers of the court, and while it is their duty to protect and defend the interests of their clients, the obligation is equally imperative to aid the court in avoiding error and in determining the cause in accordance with justice and the established rules of practice.' " (*Williams v. Superior Court* (1996) 46 Cal.App.4th 320, 330.) The juvenile court did not receive such aid here, resulting in

---

**4**      Because we must remand for the juvenile court to enter ICWA findings and orders, we will not consider here whether mother has forfeited her claim of error by failing to raise it in the juvenile court after our denial of the writ petition.

an unreasonable delay in achieving permanence for this young minor. (See, e.g., *In re Sade C.* (1996) 13 Cal.4th 952, 993 [noting "the pointed and concrete harm that the child may suffer" from prolonged proceedings]; *In re A.R.* (2021) 11 Cal.5th 234, 249 ["dependent children have a critical interest in avoiding unnecessary delays to their long-term placement"]; *In re Marilyn H.* (1993) 5 Cal.4th 295, 306 [children have a "compelling right[] . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child"].)

The juvenile court was required to make findings as to the applicability of the ICWA and its failure to do so here was an error. (*In re Jennifer A.* (2002) 103 Cal.App.4th 692, 704-705, 709.) Contrary to the Agency's suggestion, an implied finding cannot be found here. While findings may be express or implied, when they are implied, the record must "reflect that the court considered the issue and decided whether ICWA applies." (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.)

In light of our order denying mother's writ petition, with the notation that the ICWA issues were premature because the juvenile court had *not* made an ICWA finding, we cannot conclude, based on complete silence on the subject thereafter, that the juvenile court considered and decided that the Agency fulfilled its inquiry and notice obligations and the ICWA does not apply. Because the juvenile court did not make an express or implied finding on the subject, we have no ICWA findings and orders to review and any remarks we would make on the adequacy of the Agency's inquiry and notice would be advisory. (See *People v. Buza* (2018) 4 Cal.5th 658, 693 ["We . . . abide by . . . a ' "cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more" ' "].) Accordingly, we remand the matter for further ICWA compliance and for the juvenile court to enter an ICWA finding based on the Agency's demonstration of inquiry and notice.

DISPOSITION

The orders terminating parental rights are conditionally affirmed subject only to full compliance with the ICWA as described in this opinion.  If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. § 1914; § 224, subd. (e).)


                                                             /s/
                                                   EARL, P. J.


We concur:


    /s/
ROBIE, J.


    /s/
BOULWARE EURIE, J.